# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3041

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Cully R. Mitchell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2010
Filed: July 30, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Cully Mitchell was convicted of conspiracy to launder money, in violation of 18 U.S.C. § 1956. The district court sentenced Mitchell to forty-four months' imprisonment. Mitchell appeals his conviction and sentence. We affirm the conviction, but remand for reconsideration of the sentence.

I.

An investigation led by Postal Inspector William Witt revealed that 290 postal money orders were purchased in St. Louis, Missouri, and cashed in Los Angeles,

California, between 2003 and 2006. Initially, the money orders were purchased by Damion Epherson and cashed by him and others. Beginning on April 15, 2004, Mitchell began cashing some of the money orders. The money orders were purchased in denominations that usually totaled $2,800, which was $200 less than the threshold for reporting the transactions to the Treasury Department. The investigation revealed that fifty-six money orders, totaling $52,600, listed Mitchell as the payee or payor.

On August 12, 2007, Witt and Postal Inspector James Davis, went to the residence of Erika Whitaker, Mitchell's wife. Whitaker had cashed one of the money orders that listed Mitchell as the payor. At Whitaker's residence, Witt and Davis encountered Mitchell, who was living with Whitaker at the time. Witt and Davis explained that they were conducting an investigation into money laundering involving the use of postal money orders.

Mitchell cooperated with the investigators and candidly explained his involvement. According to Witt, Mitchell stated that Epherson was a childhood acquaintance and that Epherson had paid him between $50 and $100 for every $1,000 that he cashed. Mitchell stated that he believed Epherson was a drug dealer. On one occasion, Mitchell had asked Epherson to sell him an ounce of cocaine for personal use. According to Mitchell, Epherson declined, responding that he did not sell quantities that small. Mitchell stated that he had no first-hand knowledge of Epherson's business in St. Louis, but assumed that Epherson was selling drugs there. According to Witt, Mitchell also stated that he thought the funds used to purchase the postal money orders were derived from Epherson's drug business.

In May 2008, Epherson and Mitchell were indicted for money laundering. The indictment alleged that Mitchell "knowingly and willingly" conspired to launder the proceeds of "unlawful activity." The indictment further alleged that Mitchell had done so by structuring money order purchases from the Post Office, and that he had

done so "knowing that the transaction is designed in whole or in part to conceal or disguise the nature, source or ownership of the proceeds of such unlawful activity."

Mitchell was tried in May 2009. At trial, Postal Inspector Witt was the sole witness. Witt sketched out the facts as set forth above, detailing his experiences investigating money laundering, discussing the documentary record in this case, and relating the statements that Mitchell made to him. Over Mitchell's objection, the government introduced Mitchell's tax return information for 2003, 2004, 2005, and 2006. Discussing this information, Witt explained to the jury that there was no record of Mitchell filing income taxes for those years. Mitchell's defense was that the government had not proved beyond a reasonable doubt that the money orders were purchased with funds from drug dealing, that Mitchell did not know that he was laundering money for a drug dealer, and that Witt's testimony about Mitchell's inculpatory statements was unreliable. The jury returned a verdict of guilty.

At sentencing, the court considered the recommendation of the presentence investigation report (PSR). The base offense level was eight. Six levels were added because the value of the funds involved was more than $30,000, but less than $70,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(D). The PSR recommended a six-level increase pursuant to U.S.S.G. § 2S1.1(b)(1), because the defendant knew or believed the funds were the proceeds of, or intended to promote an offense involving the distribution of a controlled substance. The PSR also recommended a four-level increase because the defendant was "in the business of laundering funds," pursuant to U.S.S.G. § 2S1.1(b)(2)(C), for a total offense level of twenty-four. The PSR calculated Mitchell's criminal history category as I, for an advisory guideline range of fifty-one to sixty-three months' imprisonment.

Mitchell set forth his objections in a lengthy sentencing memorandum and iterated his objections at the sentencing hearing. R. at 20-46; Sent. Tr. at 2-6, 10-18. Mitchell objected to the enhancement for laundering funds derived from drug

distribution and the enhancement for being in the business of money laundering. R. at 27-34; Sent. Tr. at 12-17. He claimed that he did not know the funds were the proceeds of or intended to promote the distribution of a controlled substance. R. at 28-29; Sent. Tr. at 12. Moreover, he argued that he was not in the business of laundering funds, describing his offense as an idiosyncratic scheme with a childhood friend. R. at 34; Sent. Tr. at 13-15. He stated that the evidence presented at trial showed that he received between $2,250 and $4,500 for negotiating the money orders, and that this was not a substantial amount of revenue. R. at 33-34; Sent. Tr. at 14. Last, he argued for a three-level minor role reduction. R. at 34-39; Sent. Tr. at 15-18. In sum, Mitchell believed that the appropriate offense level was 11, with a guideline range of 8 to 14 months' imprisonment. R. at 39; Sent. Tr. at 6.

The court denied Mitchell's objections and declined to grant a minor role reduction. The court, however, varied downward from the guideline range and sentenced Mitchell as set forth above.

## II.

### A. Sufficiency of the Indictment

Mitchell argues that the indictment was deficient because it failed to allege all of the elements of the offense charged and that this deficiency was prejudicial. Specifically, he attacks the indictment for failing to allege that he knew the funds used to purchase the money orders were proceeds from unlawful activity.

"When an indictment is challenged for the first time after the verdict is returned, we apply a deferential standard of review, upholding the indictment unless it is so defective that by no reasonable construction can it be said to charge the offense for which the defendants were convicted." United States v. Jenkins-Watts, 574 F.3d 950, 968 (8th Cir. 2009) (internal punctuation omitted), cert. denied, 130 S. Ct. 1915

(2010); see also United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996) ("Although the sufficiency of an indictment is a jurisdictional issue that may be raised at any time, an indictment that is challenged after jeopardy has attached will be liberally construed in favor of sufficiency.").

As set forth above, the indictment alleged, inter alia, that Mitchell had knowingly and willfully conspired with Epherson to violate 18 U.S.C. § 1956. Mitchell did not object to the indictment prior to trial. The indictment articulated the government's allegations regarding the manner and means of the conspiracy. The indictment was not so defective that Mitchell could not have reasonably understood the offense for which he was charged. Accordingly, the indictment was sufficient. See United States v. Wydermyer, 51 F.3d 319, 325 (2d Cir. 1995) (holding that indictment need not allege defendant knew funds derived from unlawful activity when indictment alleges defendant knowingly attempted to commit the offense); see also United States v. Diaz-Diaz, 135 F.3d 572, 575-77 (8th Cir. 1998) (discussing when deficiency in the indictment warrants reversal).

## B. Admission of Tax Return Information

Mitchell argues that the district court abused its discretion by admitting his tax return information. He claims that the tax return information was not relevant and that any probative value was outweighed by the potential prejudicial effect.

We review the district court's ruling on the admissibility of evidence for abuse of discretion. United States v. Chase, 451 F.3d 474, 479 (8th Cir. 2006). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All relevant evidence is admissible, but relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 402, 403.

The district court overruled Mitchell's objection, stating that the tax information was relevant to show a plan to conceal the transactions and that its relevance appeared to outweigh the potential prejudicial effects. Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy. United States v. Mangual-Santiago, 562 F.3d 411, 429 (1st Cir.), cert. denied, 130 S. Ct. 293 (2009). The tax information was thus relevant to the government's assertion that Mitchell was engaged in a conspiracy to launder money. Mitchell has not shown that the danger of unfair prejudice substantially outweighed the probative value of the tax information. Accordingly, the district court did not abuse its discretion by admitting the tax information into evidence.

C. Adverse Inference During Closing Argument

Mitchell argues that the district court abused its discretion by preventing him from suggesting to the jury that it draw a "missing witness" adverse inference against the government. He wanted to argue during closing argument that the government's decision not to call Inspector Davis to testify cast doubt upon the veracity of Witt's testimony.

We review for abuse of discretion a district court's ruling on the propriety of a missing witness adverse inference. Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996). To constitute reversible error, the district court's prohibition of an adverse inference argument must have "resulted in injury or prejudice." Id. The government stated that Inspector Davis was available to testify if Mitchell so wanted; Mitchell declined the government's invitation. Thus, an adverse inference argument based upon a missing witness was inappropriate. See United States v. Cole, 380 F.3d 422, 427 (8th Cir. 2004) (stating that in the context of jury instructions, adverse inferences from missing witnesses are not appropriate "where the defense does not show that the government possesses the sole power to produce the witness"). Mitchell has not

shown that he suffered any injury or prejudice from the district court's decision. Accordingly, the district court did not abuse its discretion in ruling as it did.

## D. Jury Instructions

Mitchell argues that the district court abused its discretion by rejecting a proposed jury instruction on the definition of "proceeds." Mitchell sought to narrow the definition of proceeds to include only profits, rather than gross revenue. We review for abuse of discretion the district court's formulations of jury instructions. United States v. Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir. 2009). We will reverse if the failure to properly instruct the jury was prejudicial. Id.

For purposes of 18 U.S.C. § 1956, proceeds equates with gross receipts when the funds are derived from drug sales. United States v. Williams, 605 F.3d 556, 567-68 (8th Cir. 2010). Mitchell argues that United States v. Santos, 553 U.S. 507 (2008), compels a different conclusion. Our precedent, however, is to the contrary. Williams, 605 F.3d at 568 (holding that Santos does not apply in the drug context); see United States v. Spencer, 592 F.3d 866, 879-80 (8th Cir. 2010) (same). Thus, Mitchell cannot show any prejudice from the jury instruction as given. Accordingly, the district court did not abuse its discretion in declining to instruct the jury as Mitchell sought, and he is entitled to no relief on this issue.

## E. Sufficiency of the Evidence

Mitchell argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he conspired to violate the money laundering statute. Specifically, he alleges that the government failed to show that he knew the transactions were designed to conceal the source of funds.

-7-

We review *de novo* the denial of a motion for judgment of acquittal. <u>United States v. Hodge</u>, 594 F.3d 614, 617 (8th Cir. 2010), <u>cert. denied</u>, 78 U.S.L.W. 3714 (June 7, 2010). "When considering a challenge to a conspiracy conviction based upon sufficiency of the evidence, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." <u>Id.</u> (internal punctuation omitted).

We conclude that the evidence was sufficient to convict Mitchell of money laundering. The indictment alleged that Mitchell conspired to violate 18 U.S.C. § 1956(a)(1)(A)(i), also known as the "promotion prong" of § 1956. The jury instruction stated that Mitchell was accused of violating § 1956(a)(1)(A)(i) by promoting unlawful activity. The jury was not instructed to consider whether Mitchell cashed the money orders to conceal or disguise the source of the funds in violation of § 1956(a)(1)(B)(i), also known as the "concealment prong" of § 1956. Accordingly, Mitchell's argument about whether there was sufficient evidence of an intent to conceal is misplaced. When considered in the light most favorable to the jury's verdict, there was substantial evidence that Mitchell had violated the promotion prong of § 1956. Thus, the district court did not err in denying Mitchell's motion for acquittal.

F. Sentencing Issues

Mitchell contests the district court's calculation of his sentence. He claims that the district court erred in three ways: (1) imposition of a six-level enhancement because he knew or believed that the money he was laundering was the proceeds of or intended to promote the distribution of a controlled substance, (2) imposition of a four-level increase because he was in the business of money laundering, and (3) failure to reduce his offense level by three because he was a minor participant in the conspiracy.

-8-

We review the district court's application of the guidelines *de novo*. United States v. Martin, 583 F.3d 1068, 1073 (8th Cir. 2009), cert. denied, 130 S. Ct. 2355 (2010). Predicate factual findings are reviewed for clear error. 18 U.S.C. § 3742(e); Martin, 583 F.3d at 1073.

1.

The district court imposed a six-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(1), which provides for an enhancement if the defendant "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical." Witt's uncontroverted testimony was that Mitchell said that he believed the money orders were the proceeds of Epherson's drug trafficking in St. Louis. Mitchell had sought to purchase cocaine for personal use from Epherson. As Mitchell related to Witt, Epherson demurred, stating that he did not truck in such small quantities of cocaine. Mitchell claims that this evidence was insufficient to justify the enhancement because it did not prove that the funds were, in fact, derived from drug trafficking.

Mitchell's focus is misplaced. The sentencing enhancement in § 2S1.1(b)(1) does not turn on any objective characteristic of the funds, but rather upon the subjective knowledge or belief of the defendant. See United States v. Payne, 962 F.2d 1228, 1235 (6th Cir. 1992) (holding that defendant's subjective belief that funds were proceeds of unlawful activity was sufficient for enhancement to apply). The district court found that Mitchell "knew that the laundered proceeds were intended to promote the offense involving the distribution of controlled substances." Based upon the evidence presented at trial, this finding was not clearly erroneous. Even if Mitchell lacked such knowledge, he would still qualify for the enhancement because he believed the funds derived from Epherson's drug dealing. Accordingly, the district court did not err in applying this six-level enhancement.

The district court also imposed a four-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(2)(C), determining that Mitchell was "in the business of laundering funds." Mitchell claims that he was not in the business of laundering funds and portrays his crime as a singular, albeit misguided, scheme with a childhood friend. Asserting that "Mitchell was in the regular business of money laundering," the government focuses on the length of time that Mitchell dealt with Epherson and on Mitchell's failure to report any other source of legitimate income.

The guideline commentary to § 2S1.1 instructs the court to look to the totality of circumstances to determine whether a defendant was in the business of laundering funds. U.S.S.G. § 2S1.1, cmt. n.4(A). The commentary lists six factors for this analysis: whether (1) the defendant regularly engaged in laundering funds; (2) the defendant laundered funds for an extended period of time; (3) the defendant engaged in laundering funds from multiple sources; (4) the defendant generated a substantial amount of revenue in return for laundering funds; (5) the defendant had a prior conviction for a money laundering related offense; and (6) the defendant made statements during the course of an undercover government investigation that he had engaged in any of the conduct listed in factors (1), (2), (3), or (4). U.S.S.G. § 2S1.1, cmt. n.4(B)(i)-(vi). The commentary to the 2001 amendment to the guidelines, which codified this enhancement, states:

> With respect to third party money launderers, subsection (b)(2)(C) provides a four-level enhancement if the defendant is "in the business" of laundering funds. The Commission determined that, similar to a professional "fence", see § 2B1.1(b)(4)(B), defendants who routinely engage in laundering funds on behalf of others, and who gain financially from engaging in such transactions, warrant substantial additional

punishment because they encourage the commission of additional criminal conduct.

U.S.S.G. app. C, amend. 634, C-736 (2009). As the commentary suggests, the question is whether the defendant was similar to a professional fence, that is, someone who is in the business of laundering funds on the behalf of others and who gains financially from engaging in such transactions. Id.

A professional fence is an individual who is part of a business that moves contraband. United States v. Collins, 104 F.3d 143, 144 (8th Cir. 1997). Insofar as they run an "underworld business," they cause greater community blight than if they act in a less entrepreneurial manner. United States v. St. Cyr, 977 F.2d 698, 702 (1st Cir. 1992). Accordingly, the sentencing commission has decided that such individuals deserve longer sentences because the amount of funds involved in the case at bar likely underestimates the scope of their criminality and the extent to which they encouraged other crimes. United States v. Warshawsky, 20 F.3d 204, 214-15 (6th Cir. 1994). It is unclear whether Mitchell was akin to a professional fence and thus properly considered as being in the business of money laundering.

Mitchell did not have a prior money laundering related conviction, he did not make any statements during an undercover government investigation, nor did he deal with multiple sources. Thus, the propriety of the enhancement depended on whether he regularly laundered money for an extended period of time and generated a substantial amount of revenue therefrom. U.S.S.G. § 2S1.1, cmt. n.4(B)(i)-(vi). It is true that Mitchell was regularly engaged in money laundering for an extended period of time, sixteen to eighteen months. The district court concluded that Mitchell had "generated a substantial amount of money" based upon the premise that he had garnered $42,000 from these transactions. The district court apparently derived this figure from the PSR, which stated that Mitchell had negotiated money orders totaling approximately $42,000. The evidence presented at trial, however, was to the contrary: Epherson paid Mitchell between $50 and $100 per money order cashed, and the

-11-

evidence was that Mitchell cashed approximately forty-five money orders for Epherson. Thus, Mitchell generated between $2,250 and $4,500 in total from Epherson over sixteen to eighteen months.

The government brought this discrepancy to our attention by way of a letter, in which it stated that it would have no objection to a remand to permit the district court to reconsider the application of the enhancement if our court concluded that the factual error might have affected the district court's decision in this regard.

We conclude that such a remand is warranted, because the difference between the two calculations is significant for determining whether Mitchell derived "substantial revenue" from these transactions and whether the enhancement should apply. See United States v. Aguasvivas-Castillo, No. 07-0111CCC, 2010 WL 883719, *2 (D.P.R. Mar. 5, 2010) (holding enhancement properly applied when defendant received at least $334,493 in kickbacks from laundering at least $4.4 million at three supermarkets); United States v. Hosseini, No. 05 CR 254, 2007 WL 2904015, *2 (N.D. Ill. Oct. 1, 2007) (holding that "massive program of structuring" $15 million in deposits rose "to the level of conducting a business"); United States v. Quarshie, No. 04 CR. 1148-5, 2007 WL 107754, *1-3 (S.D.N.Y. Jan. 16, 2007) (holding that defendant was not in the business of laundering funds when she received only $4,000 from laundering $100,000 for one person).

3.

Finally, the district court denied Mitchell's plea for a three-level minor role reduction pursuant to U.S.S.G. § 3B1.2. Section 3B1.2 provides for a reduction in the offense level when the defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant." Id. at § 3B1.2, cmt. n.3. Whether a defendant played a minor role is a question of fact reviewed for clear error.

United States v. Deans, 590 F.3d 907, 909 (8th Cir. 2010). The burden of proof rests with the defendant to prove that he played a minor role. Id.

Mitchell emphasizes that he cashed approximately fifteen percent of the known money orders in the conspiracy and that this represented a similar percentage of the total amount of funds transferred. He asserts that he was not involved in the underlying drug dealing, that he did not participate in the purchase of the money orders, and that he did not transport the money orders from St. Louis to Los Angeles. When denying Mitchell's request for this reduction, the district court stated that although his culpability was less than Epherson's, Mitchell could not be considered "anything less than a full participant in the conspiracy."

Epherson and Mitchell were the only principals in the money laundering conspiracy. The fact that Mitchell was less culpable than Epherson does not necessarily lead to the conclusion that Mitchell was substantially less culpable than the average participant. See United States v. Bush, 352 F.3d 1177, 1182 (8th Cir. 2003) ("[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense."). Accordingly, Mitchell has not established that the district court clearly erred in finding him a full participant in the conspiracy and denying his request for a minor-role reduction.

III.

The conviction is affirmed. The sentence is vacated, and the case is remanded to the district court for reconsideration of the U.S.S.G. § 2S1.1(b)(2)(C) enhancement in light of the amount of revenue that Mitchell in fact derived from his transactions.

_____