# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2673

_____

United States of America

*Plaintiff - Appellee*

v.

Shelby Lee Young, Jr., also known as Chevy

*Defendant - Appellant*

_____

No. 11-2985

_____

United States of America

*Plaintiff - Appellee*

v.

Phillip Duane Lewis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 18, 2012
Filed: August 24, 2012

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Shelby Lee Young and Phillip Duane Lewis conspired to distribute crack cocaine in Iowa City. Young pled guilty to conspiracy to distribute at least 28 grams of cocaine base and was sentenced to 188 months. A jury convicted Lewis of conspiring to distribute less than 28 grams of cocaine base and distributing at least 28 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. The district court[1] sentenced Lewis to 108 months. Both appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Lewis and Young sold crack cocaine in the Iowa City area from March through November 2010. They received eight-ball-sized[2] quantities of crack cocaine from Antonio Nathaniel Martin and DeMarion Brewer, who traveled to Chicago about once a week to buy between one and 4.5 ounces of the drug. Between July 22 and October 27, 2010, Iowa City police conducted 14 controlled buys from the group. The first 11 controlled buys totaled 127.78 grams of crack cocaine, and the last three yielded 140.84 grams, for a grand total of 268.62 grams. On November 4, 2010, police executed a search warrant at Lewis's apartment, where they seized a 9mm loaded handgun, 10.65 grams of crack cocaine, and $2,086.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

[2]An "eight ball" of crack cocaine is 3.5 grams, or one-eighth of an ounce.

-2-

## I. Shelby Lee Young

Young bought one- and two-ounce quantities of cocaine base from another co-conspirator that he divided and sold. He sold crack cocaine to law enforcement during three of the 14 controlled buys and was present for a fourth. In the three controlled buys, Young sold 3.64 grams, 4.89 grams, and 4.17 grams of crack cocaine, respectively. The presentence report attributed to him 63.79 grams of cocaine base.

Young pled guilty to a lesser-included offense. He had an extensive criminal background of ten adult convictions, including two prior felony drug convictions. With seven criminal history points, Young had a total offense level of 31 and a criminal history category of VI, for a range of 188 to 235 months. Young requested a downward variance from his designation as a career offender. At sentencing, the district court noted the serious nature of Young's offense. The court said it had considered the career offender enhancement and Young's history and characteristics. ("I have considered his age, his childhood, his history, his education, his lack of education. He also does not have a substantial work history. In considering the Sentencing Guidelines, I have considered the Career Offender Guideline, the extent to which it enhances what his sentence would otherwise be, and the extent to which it exhibits the will of Congress."). The court sentenced Young to 188 months, the bottom of the guidelines range.

Young appeals, arguing that the district court abused its discretion in sentencing him. He requests that this court abolish the presumption of reasonableness and "find that any application of the Guidelines is an abuse of discretion as the Guidelines have corrupted the integrity of the Judicial Branch." He contends that any consideration of the Guidelines is unreasonable and unconstitutional.

This court reviews Young's constitutional challenge to his sentence de novo. ***United States v. Carpenter***, 487 F.3d 623, 625 (8th Cir. 2007). The Supreme Court requires courts to examine the Guidelines as one factor under 18 U.S.C. § 3553(a). *See, e.g.,* ***Kimbrough v. United States****,* 552 U.S. 85, 90 (2007) ("In accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence."); ***Gall v. United States***, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."); ***Rita v. United States***, 551 U.S. 338, 352 (2007) ("This Court's Sixth Amendment cases do not . . . prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences."); ***United States v. Booker***, 543 U.S. 220, 259 (2005) ("Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals."). The district court properly considered the sentencing guidelines, specifically noting that the Guidelines were an important "but not in any way controlling factor to be considered." Young's arguments are without merit.

## II. Phillip Duane Lewis

Lewis bought crack cocaine from Martin after he moved in with Lewis and began dealing from his bedroom. Martin sold drugs from Lewis's apartment. Lewis often opened the door for buyers and witnessed the transactions. Lewis purchased crack cocaine directly from Martin, and three times sold it to an undercover agent (one of Martin's customers). Lewis sold the agent a total of 140.84 grams.

At sentencing, Lewis argued for a two-level decrease under U.S.S.G § 3B1.2(b) for playing a minor role in the conspiracy. The court refused, finding that Lewis "provided a place for which drug trafficking could take place, he made

deliveries, he directed people to the apartment, he purchased from multiple sources during this time, had his own customers, and was sufficiently, deeply involved." The district court assessed Lewis a two-level increase for possession of a dangerous weapon, finding he was aware of the firearm in the house he controlled and that it was connected to the offense. The district court assigned Lewis a base offense level of 30, for a range of 108 to 135 months. The court sentenced him to 108 months, the bottom of the guidelines range.

Lewis contends the district court erred in (1) calculating the drug quantity attributable to him, (2) refusing to give him a minor role deduction, and (3) imposing a two-level enhancement for possession of a firearm in connection with the drug offense.

Lewis first argues the district court erred by attributing more than 196 grams of cocaine to him. According to Lewis, the amount was speculative and the district court failed to make specific findings about the "dates, transactions and individual quantities upon which its mathematical conclusion is based."

A sentencing court's determination of drug quantity is reviewed for clear error. *United States v. Gonzales-Rodriguez*, 239 F.3d 948, 953 (8th Cir. 2001). This court will overturn a finding of drug quantity "only if the entire record definitively and firmly convinces us that a mistake has been made." *Id.* "A district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court's calculation is supported by sufficient evidence." *United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008), *citing United States v. Serrano-Lopez*, 366 F.3d 628, 638 (8th Cir. 2004). When determining attributable drug quantity in a drug conspiracy, U.S.S.G. §1B1.3 combines drug quantities attributable directly to the defendant as well as quantities attributable to the reasonably foreseeable actions of others taken to further the

conspiracy. "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *United States v. Pugh*, 25 F.3d 669, 677 (8th Cir. 1994) (quoting USSG §2D1.1, comment n.12). The government bears the burden to prove drug quantity by a preponderance of the evidence. *United States v. Marshall*, 411 F.3d 891, 894 (8th Cir. 2005).

The district court did not clearly err by attributing to Lewis more than 196 grams of crack cocaine. The presentence investigation report attributed 151.89 grams of cocaine base, an amount Lewis conceded at sentencing. Relying on trial testimony from Lewis's cooperating co-conspirators, the district court found Lewis responsible for additional quantities of cocaine – the amount seized from his apartment, and the amount sold by co-defendant Martin to the police while he lived with Lewis. These amounts of cocaine – added to the 151.89 grams directly attributable to Lewis – totaled 190 grams. The district court found Lewis responsible for at least an additional six grams, either purchased by Lewis for personal use or for re-distribution, from other sales in the apartment by Martin, or other sales by the conspiracy in which Lewis participated. (The court found that there "were certainly other sales associated with this, his own purchases, the defendant's own purchases for resale, and Mr. Martin's other transactions while operating out of the defendant's apartment clearly put this over 196 grams.") The district court's reliance on trial testimony to find Lewis responsible for the additional amounts of cocaine was not clearly erroneous, and the drug quantity was supported by sufficient evidence.

Lewis next contends the district court erred by denying him a two-level adjustment for playing a minor role in the conspiracy. Section 3B1.2 provides for a reduction in the offense level when the defendant "plays a part in committing the offense that makes him substantially less culpable than the average participant." **U.S.S.G. § 3B1.2, cmt. n. 3**. Whether a defendant played a minor role is a question

of fact, reviewed for clear error. *United States v. Mitchell*, 613 F.3d 862, 870 (8th Cir. 2010). The defendant has the burden to prove he played a minor role. *Id.*

Lewis points to the presentence investigation report's statement that he was a minor participant. He emphasizes that his role resulted from his addiction to crack, and his involvement was minimal compared to the other participants. According to Lewis, he was "not known to be a distributor" and began selling drugs only after law enforcement had made 11 of their 14 controlled buys.

Lewis delivered over half the total amount of cocaine purchased from the conspiracy. *United States v. Adamson*, 608 F.3d 1049, 1054 (8th Cir. 2010) ("We have routinely considered drug quantity when reviewing the denial of a minor role reduction."). That Lewis was less culpable than Martin does not mean that Lewis was substantially less culpable than the average participant. *See United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003) ("[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense."). Lewis's home was a center for cocaine distribution; there he helped his roommate receive customers, collect money, and complete transactions. The district court did not clearly err in finding that Lewis was a full participant in the conspiracy and denying his request for a minor-role reduction.

Lewis finally attacks the district court's two-level enhancement for possession of a dangerous weapon. A district court's finding that a defendant possessed a firearm for purposes of § 2D1.1(b)(1) may be overturned only if clearly erroneous. *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001).

United States Sentencing Guideline Section 2D1.1(b)(1) mandates a two-level increase if the government proves by a preponderance of the evidence that the defendant possessed a weapon during the commission of a drug offense. *United*

*States v. Fairchild*, 189 F.3d 769, 779 (8th Cir. 1999). In order for the enhancement to apply, the government must establish two things: "(1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense." *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010); *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008). "[T]he presence of a firearm in a location where it could be used to protect drugs can be sufficient evidence to prove the requisite connection." *United States v. Warford*, 439 F.3d 836, 844 (8th Cir. 2006), *citing United States v. Burke*, 91 F.3d 1052, 1053 (8th Cir. 1996). "To determine that a gun was connected to the drug activity, the district court may find a temporal and spatial relationship between the defendants, the criminal activity, and the firearm." *United States v. Canania*, 532 F.3d 764, 771 (8th Cir. 2008), *citing United States v. Newton*, 184 F.3d 955, 958 (8th Cir. 1999). "Therefore, in order to establish a nexus between these drug-related activities and the firearm, the government [has] to prove by a preponderance of evidence that the firearm was found in the same location where drugs or drug paraphernalia were located or where part of the conspiracy took place." *Atkins*, 250 F.3d at 1214.

Lewis contends he did not possess the gun. He argues that although it was present at his apartment, the gun was secured in Martin's locked room, and Martin took affirmative steps to keep the gun away from Lewis, including installing a lock on his door to keep Lewis out. Lewis also says he did not know Martin owned a gun, though Martin testified that Lewis saw him with a gun and Lewis admitted he heard a gun and saw men in Lewis's bedroom with a gun on one occasion. Lewis also invokes the jury's acquittal of him on the charge of possession of a firearm in furtherance of a drug trafficking crime.

Even if Lewis never used or touched the weapon, the enhancement applies if it was reasonably foreseeable to Lewis that Martin possessed a gun in order to further the conspiracy. *See id.* The gun was found in Martin's bedroom in Lewis's apartment, and Lewis admitted he heard a gunshot on one occasion and saw people

with a gun in Martin's room. *See **Peroceski***, 520 F.3d at 889 (affirming the enhancement when a gun was "found in the same location as drugs or drug paraphernalia."). The government established "a temporal and spatial relationship between the defendants, the criminal activity, and the firearm" located in Martin's bedroom. *See **Canania***, 532 F.3d at 771. That Lewis was acquitted of the firearms charge does not preclude the district court from applying the enhancement at sentencing. ***Id.***, *citing **United States v. Eberspacher***, 936 F.2d 387, 389 (8th Cir. 1991) ("We also note that the jury's acquittal of [defendants] of the firearms charge does not preclude the district court from applying the section 2D1.1(b)(1) two-level enhancement."). The district court did not clearly err in finding that Martin's possession of a firearm was reasonably foreseeable to Lewis and that it was reasonably foreseeable that the firearm was in furtherance of the conspiracy to distribute cocaine.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____