BENTON, Circuit Judge.
A jury convicted Jason Lee Holmes and Juan Antonio Castaneda Rendon of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. They appeal, arguing that the district court[1] erred in admitting expert testimony on narco-saints. Holmes also argues that a limiting instruction should have been given on the narco-saint testimony, that there was insufficient evidence to sustain his conviction, and that the district court committed sentencing errors. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.
I.
As the first witness, the government called Robert R. Almonte, the United States Marshall for the Western District of Texas, as an expert, on the iconography of the Mexican drug underworld. He linked to drug trafficking several images and shrines in the home of Rendon and Christian Maldonado, a co-conspirator. Almonte’s testimony focused on images of Jesús Malverde, a “narco-saint” hailed as a “Mexican Robin Hood.” Almonte also testified that Malverde is a patron saint of the poor, noting that many not associated with drug trafficking have statues of Malverde. Almonte concluded that a statue is only one indication of drug activity.
Holmes and Rendon attack Almonte’s testimony, arguing that the testimony was (a) given by an unqualified expert, (b) unreliable, (c) irrelevant, (d) unfairly prejudicial, and (e) improper “drug courier” profile evidence. This court reviews the district court’s decision to admit expert testimony for abuse of discretion, according it substantial deference. United States v. Roach, 644 F.3d 763, 763-64 (8th Cir.2011).
Almonte was properly qualified. A witness may be qualified by knowledge, skill, experience, training, or education. Fed.R.Evid. 702. For about a decade, Almonte studied the iconography of the Mexican drug underworld. He observed icons in hundreds of narcotics cases and traveled to numerous Mexican shrines. Almonte *850 has self-published materials on the subject and has conducted law-enforcement trainings on recognizing it. The defendants emphasize Almonte’s lack of formal education about narco-saint iconography, but that is not required under Rule 702. In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field. See, e.g., United States v. Schwarck, 719 F.3d 921, 923-24 (8th Cir.2013); United States v. Molina, 172 F.3d 1048, 1056 (8th Cir.1999).
Holmes and Rendon challenge the reliability of Almonte’s testimony, arguing that his methodology has an impermissibly high rate of error. In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court made trial judges the gatekeepers to exclude unreliable scientific testimony. In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court stated that this gatekeeper function applies to all expert testimony, not just testimony based in science. Daubert established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony. See 509 U.S. at 592-94, 113 S.Ct. 2786. The checklist includes: (1) whether the theory or technique can and has been tested, (2) whether it has been subjected to peer review, (3) whether there is a high known or potential rate of error, and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. Id. In Kumho Tire, the Court explained that, depending upon “the particular circumstances of the particular case at issue,” these factors might apply in assessing the reliability of nonscientific expert testimony. 526 U.S. at 150, 119 S.Ct. 1167. Holmes and Rendon focus on the third Daubert factor, asserting that Almonte’s testimony is unreliable because he acknowledged a high rate of error because many not associated with drug trafficking have statues of Malverde.
Holmes and Rendon misread Kumho Tire and exaggerate the importance of error rates in non-scientific evidence. Almonte’s testimony is non-scientific evidence, and not all of the Daubert factors necessarily apply. Kumho Tire, 526 U.S. at 150, 119 S.Ct. 1167. Expert testimony must rest on reliable principles and methods, but the “relevant reliability concerns may focus upon personal knowledge or experience” rather than scientific foundations. Id. This court has repeatedly approved of law enforcement officials testifying as experts on the modus operandi of drug dealers. See, e.g., Schwarck, 719 F.3d at 923; Molina, 172 F.3d at 1056 (“A district court has discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar.”). Law-enforcement officers may testify about the drug trafficking connection of otherwise innocuous household items. United States v. Jeanetta, 533 F.3d 651, 657 (8th Cir.2008). In Jeanetta, an officer testified as an expert about the significance of Ziploc bags in the drug trade. Although most users of Ziploc bags are not drug dealers, the bags have drug-trade application. Similarly, even if many with Malverde statues are not affiliated with the drug trade, narco-saint iconography may be an indicator of drug trafficking. The reliability of such evidence comes not from scientific foundations but from Almonte’s personal knowledge and experience. Kumho Tire, 526 U.S. at 150, 119 S.Ct. 1167. The district court did not abuse its discretion in finding Almonte’s expert testimony reliable.
*851 Holmes and Rendon assert that Almonte’s testimony was irrelevant and unfairly prejudicial. This court has approved as relevant and helpful expert testimony on the modus operandi of drug dealers. Schwarck, 719 F.3d at 923-24; Molina, 172 F.3d at 1056-57. The standard for relevancy is low. Evidence should be admitted if it has any tendency to make a fact of consequence more or less probable. Fed.R.Evid. 401. In this case, where the government must prove a drug-trafficking conspiracy, drug iconography in the defendant’s home is highly relevant. Holmes and Rendon believe that the evidence was unfairly prejudicial because it encouraged guilt from improper reasoning, but Almonte testified that the iconography alone does not indicate drug trafficking activity. The district court properly balanced the probative value of the evidence against its prejudicial effect.
Holmes and Rendon conclude with the argument that Almonte’s testimony was “drug courier” profile evidence, which is generally inadmissible. Florida v. Roy-er, 460 U.S. 491, 493, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Drug-courier evidence “involves nothing more than the introduction of investigative techniques that law enforcement officers use to identify potential drug couriers.” Schwarck, 719 F.3d at 924. See also United States v. Carter, 901 F.2d 683, 684 (8th Cir.1990) (describing the “investigative tools” of the Postal Service’s “Narcotic Mail Profile Program” as impermissible drug courier profile evidence). Drug-courier evidence is different than “tools of the trade” or “modus operandi” evidence, which frequently focuses on the paraphernalia of drug trafficking. Unlike impermissible courier profile evidence, Almonte was not explaining the investigative techniques law enforcement used to identify Holmes and Rendon. Rather, his testimony explained the significance of drug trafficking iconography located in Rendon’s home. Without Almonte’s testimony, the significance of such evidence “would not be familiar to average jurors with no previous exposure to the drug trafficking business.” Schwarck, 719 F.3d at 924. The district court did not abuse its discretion in admitting Almonte’s expert testimony.
II.
Holmes argues that the trial court should have given a limiting instruction on the narco-saint testimony, claiming this testimony was relevant only to Rendon. This court reviews for abuse of discretion the decision whether to give a limiting instruction. United States v. Velazquez-Rivera, 366 F.3d 661, 666 (8th Cir.2004).
Holmes’s argument is without merit. The government had to prove that a conspiracy existed between Holmes, Christian Maldonado, and Gladis L. Maldonado and that Holmes knowingly and intentionally joined it. Rendon was charged with being in the same conspiracy with the Maldonados. Since the narco-saint evidence was relevant to establish the existence of the conspiracy, its admission was proper for both parties, and no limiting instruction was necessary.[2]
III.
Holmes attacks the sufficiency of the evidence for his conspiracy convic *852 tion. This court reviews “challenges to the sufficiency of the evidence de novo, viewing the facts in the light most favorable to the verdict, resolving any evidentiary conflicts in favor of the prosecution, and accepting all reasonable inferences that support the verdict.” United States v. Osuna-Zepeda, 416 F.3d 838, 841-42 (8th Cir.2005). This court upholds a verdict if it finds that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. at 842.
To prove conspiracy, the government must show: (1) there was a conspiracy; (2) Holmes knew of it; and (3) he intentionally joined it. United States v. Rolon-Ramos, 502 F.3d 750, 754 (8th Cir. 2007). “The conspiracy’s existence may be proved by direct or circumstantial evidence.” Id., citing United States v. Cain, 487 F.3d 1108, 1111 (8th Cir.2007). Large quantities of drugs — rather than amounts consistent with personal use — support an inference that the defendant knew he was part of a larger venture that extended beyond his participation. United States v. Moya, 690 F.3d 944, 949 (8th Cir.2012), citing United States v. Prieskorn, 658 F.2d 631, 634-35 (8th Cir.1981).
The government proved a conspiracy between Daniel L. Henry and the Maldonados. Henry testified that Holmes knew of that conspiracy. Evidence of, Holmes’s participation in the conspiracy was: (1) the presence of Holmes’s nickname in the Maldonados’ drug ledger, showing the purchase of meth in distributable quantities; (2) testimony by Henry that Holmes purchased meth from him in distributable quantities; and (3) recorded conversations of the Maldonados and Holmes discussing meth purchases-in thinly-veiled language. Based on this evidence, a reasonable jury could find Holmes guilty beyond a reasonable doubt.
IV.
Holmes attacks his sentence, arguing that the district court (a) procedurally failed to determine the scope of the criminal activity he agreed to jointly undertake and (b) erred in finding foreseeable to Holmes the distribution of 500 grams or more of meth. This court reviews de novo the district court’s interpretation and application of the Sentencing Guidelines and reviews for clear error its findings of fact. United States v. Spotted Elk, 548 F.3d 641, 668 (8th Cir.2008). “This court will overturn a finding of drug quantity ‘only if the entire record definitively and firmly convinces us that a mistake has been made.’ ” United States v. Young, 689 F.3d 941, 945 (8th Cir.2012), quoting United States v. Gonzalez-Rodriguez, 239 F.3d 948, 953 (8th Cir.2001).
Section 1B1.3 provides that the base offense level should be calculated using “all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.” In a drug-distribution conspiracy, “a defendant’s conviction for conspiracy does not automatically mean that every conspirator has foreseen the total quantity of drugs involved in the entire conspiracy.” Spotted Elk, 548 F.3d at 674. Instead, “the district court must find the scope of the individual defendant’s commitment to the conspiracy and the foreseeability of particular drug sale amounts from the individual defendant’s vantage point.” Id. ‘“Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.’ ” Young, 689 F.3d at 945, quoting United States v. Pugh, 25 F.3d 669, 677 (8th Cir.1994).
The district court found that Holmes reasonably could foresee distribution of 500 grams or more of methamphet *853 amine. Nonetheless, at the government’s request, the district court sentenced Holmes based on conspiracy to distribute less than 500 grams.[3]
Holmes argues that the district court procedurally failed to determine the scope of the criminal activity he agreed to jointly undertake. This argument is without merit. The district court considered his purchasing patterns and debt for past purchases, both indicating Holmes’s commitment to the conspiracy. The district court also considered the foreseeability of particular drug-sale amounts from Holmes’s vantage point. The district court properly applied section 1B1.3.
Holmes argues that the district court clearly erred in finding foreseeable the distribution of 500 grams or more of meth. Because the district court sentenced him based on less than 500 grams, any error is harmless. Nonetheless, the district court found “that the quantity of drugs for which Mr. Holmes would be accountable ... would be 500 grams.” The court based this finding on a DEA agent’s testimony and the evidence at trial. According to entries in drug ledgers, Holmes received approximately 350 grams from the conspiracy. The district court said distribution of at least another 150 grams by the Maldonados was a foreseeable part of the conspiracy. Holmes argues he withdrew from the conspiracy with the Maldonados, cutting off foreseeability, yet he presents no evidence of affirmative withdrawal. See Smith v. United States, — U.S. -, 133 S.Ct. 714, 721, 184 L.Ed.2d 570 (2013) (explaining that in a conspiracy withdrawal “must be active” and the burden of establishing it “rests upon the defendant”). Nothing in the record definitively and firmly convinces this court that the district court made a mistake in its findings.
The judgment is affirmed.

. The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

. Holmes emphasizes an ambiguous comment by the district court: "I don’t know that these icons are necessarily as probative of a conspiracy as much as they are of drug trafficking activity.” Because the government must prove "that the purpose of [the] agreement was to purchase and distribute the methamphetamine,” United States v. Robinson, 217 F.3d 560, 564 (8th Cir.2000), evidence of drug trafficking activity is probative of conspiracy here.

. The jury found Holmes guilty of conspiring to distribute between 50 and 500 grams of meth. The government made its request to avoid any disparity between the jury’s verdict and the district court’s sentencing. However, a "district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court’s calculation is supported by sufficient evidence.” Young, 689 F.3d at 945, quoting United States v. Webb, 545 F.3d 673, 677 (8th Cir.2008).