**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DOMINGO MARTINEZ, JR.,

    Defendant - Appellant.

No. 22-1167

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CR-00277-DDD-1)**
_____

Ryan A. Ray of Norman Wohlgemuth, LLP, Tulsa, Oklahoma, for Defendant-Appellant.

Cyrus Y. Chung, Assistant U.S. Attorney, (and Cole Finegan, U.S. Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **EID**, **SEYMOUR**, and **KELLY**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant-Appellant Domingo Martinez, Jr. was convicted of possession with intent to distribute and distribution of 50 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 1 R. 12; 6 R. 4–5, and sentenced to 144 months' imprisonment and five years' supervised release, 2 R. 64; 4 R. 17.  On appeal, he

challenges (1) the admission of a narcotics detective's testimony about Santa Muerte shrines (he also claims the testimony violated his First Amendment rights), and (2) the district court's instructing the jury to disregard a robocall inadvertently played during trial, rather than declaring a mistrial. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

**Background**

A confidential informant visited Mr. Martinez's autobody shop to consummate a drug transaction. Law enforcement searched the informant before the transaction occurred. 7 R. 36–37. Initially, Mr. Martinez was away when the informant arrived and the informant left. Id. at 42–44. When the informant returned, Mr. Martinez was at the shop and told the informant the "product" was not ready yet and he should return later. Id. at 50. Upon the informant's third visit, Mr. Martinez sold him 443 grams of methamphetamine. Id. at 51–58. Following the purchase, agents executed a search warrant at the shop, finding several digital scales, baggies, firearms, ammunition, and a shrine to Santa Muerte (known as the patron saint of drug traffickers). 2 R. 9–11.

Agents arrested Mr. Martinez and charged him. Id. at 6, 8. At trial, the government introduced the expert testimony of Detective Brian Jeffers, a law-enforcement officer with 22 years' experience and expertise in drug trafficking. 7 R. 234, 236, 243–44. Detective Jeffers testified that only someone involved in drug trafficking could access the quantity of drugs sold by Mr. Martinez. Id. at 247. He

also testified that drug traffickers typically carry the type of scales found at the shop, id. at 253–54, and the type and number of bags found at the shop, id. at 254–55. Based on his investigative experience, the officer further testified that Santa Muerte is a saint that drug traffickers pray to for protection and that he would expect someone in possession of a shrine to be associated with drug trafficking. Id. at 260–61. When asked whether he had "ever seen a Santa Muerte shrine at someone's house who wasn't associated with drug trafficking[,]" Detective Jeffers responded, "No, sir." Id. at 261. Mr. Martinez did not object.

Mr. Martinez raised an entrapment defense, testifying that the informant "continuously" visited his autobody shop — at least ten times. Aplt. Br. at 1; 7 R. 138, 144. The informant gave contrary testimony that he had only visited Mr. Martinez once before the transaction occurred. 7 R. 83, 98. Mr. Martinez stated that, while at his shop, the informant twice displayed a gun and portrayed himself as a cartel member. Id. at 145, 151. According to Mr. Martinez, the informant made him fear for the safety of his wife and children. Id. at 151. Wanting the informant gone, Mr. Martinez testified that he sold the methamphetamine to get him out of his shop. Id.

During Mr. Martinez's testimony, a spontaneous "robocall" announcement played over the courtroom speakers warning that criminals were seeking to defund the police and soliciting public support for police against the efforts of criminals. Aplt. Br. at 12. The judge had no idea of the source or how it managed to play over the speakers, but he immediately told the jury to disregard it. 7 R. 141. The court

3

took a recess to solve the issue.  Id. at 142.  When the jury returned, the court once again instructed it to disregard the interruption.  Id.  Mr. Martinez never objected to the court's treatment of the disruption.  Ultimately, the jury convicted Mr. Martinez despite his entrapment defense.  2 R. 8; 6 R. 4–5.

## Discussion

Because Mr. Martinez failed to object to the admission of the Santa Muerte testimony or to the court's treatment of the robocall announcement, we review for plain error.[1]  See United States v. Jimenez, 61 F.4th 1281, 1285 (10th Cir. 2023). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (citation omitted).  "An error is plain if it is clear or obvious under current, well-settled law[,]" and generally "the Supreme Court or this court must have addressed the issue."  United States v. Wells, 38 F.4th 1246, 1256 (10th Cir. 2022) (citation omitted).  To satisfy the third factor, usually "the error must have affected the outcome of the district court proceedings."  Gonzalez-Huerta, 403 F.3d at 732 (citation omitted).  To satisfy the fourth factor, the error must be "'particularly egregious' and our failure to notice the error would result in a

---

[1] The parties agree on the plain-error standard of review.  Aplt. Br. at 16–17, 31; Aplee. Br. at 5, 21.

4

'miscarriage of justice.'" Id. at 736 (citation omitted).

A.    **Admission of testimony regarding connection between Santa Muerte shrine and drug trafficking**

1.    **Plain error**

Mr. Martinez argues that the admission of testimony regarding the Santa Muerte shrine's connection to drug traffickers was plain error because it conflicts with our decision in United States v. Medina-Copete, 757 F.3d 1092 (10th Cir. 2014). Aplt. Br. at 17–21. There, we held that an expert who testified about Santa Muerte worship was "improperly vetted under Fed. R. Evid. 702[.]" Medina-Copete, 757 F.3d at 1095, 1105. This case is readily distinguishable from Medina-Copete, and we find no error, plain or otherwise, in the admission of this testimony.

Law enforcement officers can testify as experts based on their experience and expertise. See, e.g., United States v. Vann, 776 F.3d 746, 759 (10th Cir. 2015); United States v. Kamahele, 748 F.3d 984, 997–99 (10th Cir. 2014); United States v. Garcia, 635 F.3d 472, 477 (10th Cir. 2011); United States v. Roach, 582 F.3d 1192, 1206 (10th Cir. 2009); United States v. Quintana, 70 F.3d 1167, 1170–71 (10th Cir. 1995). This testimony is helpful to the jury "[b]ecause the average juror is often innocent of the ways of the criminal underworld," and it "provide[s] jurors a context for the actions of defendants." Garcia, 635 F.3d at 477. Under Federal Rule of Evidence 702 and the Daubert test, the reliability of expert testimony from law enforcement officers stems from specialized knowledge gained through experience and training. See United States v. Garza, 566 F.3d 1194, 1199 (10th Cir. 2009)

5

(citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)).

As noted in Vann, "Medina-Copete is the exception not the rule[.]" 776 F.3d at 759. In Medina-Copete, two defendants were pulled over; one appeared to be praying from a sheet, which later revealed a prayer to Santa Muerte. 757 F.3d at 1096. The witness who subsequently testified about Santa Muerte was qualified as an expert based on 25 years of law enforcement experience as well as extensive personal research into Mexican drug traffickers. Id. at 1098. He testified about the religious significance and sainthood status of Santa Muerte, including that "very often criminal drug traffickers and other criminals pray to [Santa Muerte] for protection from law enforcement[,]" and that praying to Santa Muerte indicates criminal activity. Id. at 1099–100.

The court in Medina-Copete found an abuse of discretion in admitting this testimony, however, because it was unreliable. Id. at 1101, 1103–04. Expert testimony based on experience alone must reveal how the experience led to the expert's conclusion, why the experience is a "sufficient basis for the opinion," and how the experience was reliably applied. Id. at 1104. Those factors were not met because the testimony was not based solely on the witness's law enforcement knowledge and experience, but also on his personal "self-study" of narcotics iconography. Id. at 1103–04. In other words, "he did not gather the information about these prayers and beliefs through surveillance, wiretaps, or even interviews of persons involved[.]" Id. (quoting United States v. Holmes, 751 F.3d 846, 854 (8th Cir. 2014) (Kelly, J., concurring)). Furthermore, the testimony improperly

6

characterized prayer to Santa Muerte as a "tool[] of the trade" of drug trafficking, it did not explain any connection between the defendant's prayer and drug trafficking, and it did not distinguish between ordinary citizens and drug traffickers praying to Santa Muerte. Id. at 1102–03. As such, it should not have been admitted.

The present case is distinguishable. Unlike the expert in Medina-Copete, Detective Jeffers's testimony was based solely on his 22 years of law-enforcement experience, with approximately 18 years focused on narcotics, not personal self-study. 7 R. 234, 236. He testified that he had witnessed thousands of drug deals, personally carried out hundreds of undercover drug deals, and was asked to train others on handling undercover drug transactions with confidential informants. Id. at 238–39, 243. Detective Jeffers did not improperly characterize Santa Muerte worship as a "tool of the trade."[2] He testified that from his experience in drug investigations, he learned traffickers pray to Santa Muerte and usually erect a shrine with alcohol or narcotics offerings at the base to pay homage and request protection. Id. at 260–61. Confirming this point, the Santa Muerte shrine found in Mr. Martinez's office had a glass of wine at the base. Id. at 261. Detective Jeffers's testimony in this case was based on "knowledge derived from previous professional experience" which "falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." United States v. Cushing, 10 F.4th 1055, 1079 (10th Cir. 2021) (citation omitted), cert. denied, 142 S. Ct. 813 (2022).

---

[2] While the PSR characterized the shrine as a tool of the trade, 2 R. 9, this characterization was never presented to the jury.

Mr. Martinez argues that Medina-Copete bars the "[m]ere observation that a correlation exists — especially when the observer is a law enforcement officer likely to encounter a biased sample[.]" Aplt. Br. at 16, 20 (quoting Medina-Copete, 757 F.3d at 1102). But the reasoning in Medina-Copete emphasizes that the officer's testimony was based on his personal research in addition to his narcotics experience, 757 F.3d at 1102, and the decision rests largely on the unreliability of the expert's personal research into narco-saints as a "cultural iconography hobbyist[,]" id. at 1098, 1103–05. Unlike expert testimony from law enforcement officers based on their experience — routinely upheld by this court — the Medina-Copete decision hinged on the expert's inability to establish how his personal self-study led to his conclusion, how it provided a sufficient basis, or how it was reliably applied to the facts. Id. at 1104. No such error pervaded Detective Jeffers's expert testimony in this case.

Mr. Martinez also argues that the testimony violated his First Amendment rights to free association. Aplt. Br. at 21–22. He cites Dawson v. Delaware, where admission of evidence as to defendant's membership in the Aryan Brotherhood violated the defendant's First Amendment rights because it was not relevant to any issue at trial. 503 U.S. 159, 166–167 (1992). But here, the Santa Muerte shrine **is relevant** to a key issue raised by Mr. Martinez's entrapment defense — whether he was predisposed to drug trafficking. See United States v. Ford, 550 F.3d 975, 982 (10th Cir. 2008). "[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations . . . simply because those

8

beliefs and associations are protected by the First Amendment." Dawson, 503 U.S. at 165.  No constitutional error occurred.

### 2.  Affecting substantial rights

The third factor of plain error review requires that any error be substantial enough to "affect[] the outcome of the district court proceedings." Gonzalez-Huerta, 403 F.3d at 732 (citation omitted).  Even if admission of the Santa Muerte testimony was plain error, it did not affect Mr. Martinez's substantial rights under the third factor.

First, Mr. Martinez was able to cross-examine Detective Jeffers and counter his testimony that Santa Muerte shrines are primarily associated with drug trafficking.[3]  7 R. 264–65.  Second, the government introduced a plethora of other evidence to rebut Mr. Martinez's entrapment defense and prove his predisposition to drug trafficking.  Detective Jeffers testified that he would never work with an informant who carried a gun, he would never instruct an informant to carry a gun, and he had never heard of a detective working with an informant who carried a gun on a controlled purchase.  Id. at 266–67.  This rebuts Mr. Martinez's testimony that the informant threatened him with a gun.  Mr. Martinez argued he gave the informant an "outrageous" price to be left alone, id. at 150, but he in fact charged the market

---

[3] When asked whether Santa Muerte is also a patron saint for "a wide variety of powers, including . . . prosperity, good health, good fortune, healing, safe passage, protection against violence, and protection against violent death[,]" Detective Jeffers responded, "That is correct, sir."  7 R. 264–65.  When asked whether one had to be a drug dealer to want any of those powers, Detective Jeffers responded no.  Id. at 265.

price for methamphetamine.  Id. at 255.  The price was determined after negotiation indicating routine bargaining instead of a sale under duress.  Id. at 85–86.  When the informant arrived at Mr. Martinez's shop when he was not there, Mr. Martinez arranged for the informant to return, id. at 163–64, countering the contention that he feared the informant.

The government also provided evidence that Mr. Martinez lied under oath in a 2006 drug trial where he was convicted for crack cocaine possession.  Aplee. Br. at 17–18; 7 R. 194–97.  And it introduced physical evidence of drug trafficking — a search of Mr. Martinez's business revealed digital scales and small plastic baggies.  7 R. 225–28.  Detective Jeffers testified based on his experience that only someone involved in drug trafficking could have access to the quantity of drugs sold by Mr. Martinez.  Id. at 247.  Any question of how often the informant visited Mr. Martinez, or whether he shared office space with another person, was a question of fact for the jury that we do not review on plain error.  See United States v. Smith, 531 F.3d 1261, 1271 (10th Cir. 2008).  Ample evidence supported the outcome here, and two pages of testimony about Santa Muerte did not affect Mr. Martinez's substantial rights.

Because Mr. Martinez cannot establish any error, plain or otherwise, under the first two factors, or that his substantial rights were affected under the third factor, we do not reach the fourth factor of plain error review.

### B.     Inadvertent robocall announcement

Because Mr. Martinez also failed to object to the court's treatment of the robocall announcement, we review for plain error.  Mr. Martinez argues that the

robocall undermined his credibility and presented an "unacceptable risk" of "impermissible factors" influencing the verdict, depriving his due process rights. Aplt. Br. at 28–29, 32–33 (citing Holbrook v. Flynn, 475 U.S. 560, 570 (1986)). According to Mr. Martinez, the trial court should have declared a mistrial or "specifically instruct[ed] the jury to ignore the interruption and its contents." Id. at 34–35. By not doing so, he argues the court erred. Id. We disagree and find no error, plain or otherwise, in the court's treatment of the interruption.

"[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978). For example, in Estelle v. Williams, the Supreme Court held that it was inconsistent with due process and equal protection for a criminal defendant to be tried in his prison clothing. 425 U.S. 501, 502, 505–06 (1976). The Court reasoned that the clothes presented a "constant reminder of the accused's condition" which could "affect a juror's judgment" in violation of the defendant's fundamental rights. Id. at 504–05.

Unlike the defendant in Estelle, Mr. Martinez was not deprived of his due process protections. Mr. Martinez argues that the district court should have specifically instructed the jury to ignore the interruption. Aplt. Br. at 34. But the court did exactly that — twice — and recessed the trial briefly to ensure that it would

11

not happen again.[4]  7 R. 141, 142.  "A jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000).  And the robocall was not a "constant reminder of the accused's condition" but a short event occurring only once.  Cf. Estelle, 425 U.S. at 504.  There is no indication the jury had time to process what was being said in the robocall announcement, and the court immediately reminded the jury to disregard it.  We find no error in the court's handling of this interruption.

Because we find no error, plain or otherwise, we do not reach the third or fourth factors of plain error review.

**AFFIRMED.**

---

[4] Mr. Martinez argues this instruction does not comply with our decision in United States v. Hardwell, 80 F.3d 1471, 1491 (10th Cir.), reh'g granted in part on other grounds, 88 F.3d 897 (10th Cir. 1996).  But this case is inapposite — unlike in Hardwell, where the instruction created a risk that the jury could misuse certain evidence for an improper purpose, here the instruction to disregard the robocall was obvious and could not reasonably be misunderstood by the jury.