FILED
United States Court of Appeals
Tenth Circuit

**March 28, 2011**

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ERIKA DENISE GARCIA,

      Defendant-Appellant.

No. 10-2115

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:09-CR-02740-MCA-1)**

---

Submitted on the briefs:*

Darcy Blue Riley, Assistant Federal Public Defender, Office of the Federal Public Defender, District of New Mexico, Las Cruces, New Mexico, for the Defendant-Appellant.

Kenneth J. Gonzales, United States Attorney, and Nathan J. Lichvarcik, Assistant United States Attorney, Office of the United States Attorney, District of New Mexico, Las Cruces, New Mexico, for the Plaintiff-Appellee.

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

     *The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

**LUCERO**, Circuit Judge.

Erika Garcia was convicted of knowingly making false statements to a federally licensed firearms dealer ("FLFD"), that is, acting as a straw buyer. She appeals her conviction and sentence on two grounds, claiming the district court: (1) abused its discretion by admitting portions of a Bureau of Alcohol, Tobacco, and Firearms ("ATF") agent's expert testimony; and (2) clearly erred by imposing a four-level sentencing enhancement for arms trafficking. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Garcia's conviction and sentence.

## I

## A

Garcia was charged in a superseding indictment with ten counts of knowingly making false statements to an FLFD, in violation of 18 U.S.C. § 924(a)(1)(A), relating to statements she made on ATF Form 4473 ("Form 4473") when she purchased or attempted to purchase the following weapons:

- One Armalite AR-50 BMG .50 caliber rifle
- One Ruger Mini-14 .223 caliber rifle
- Several Glock .40 caliber and 9 mm handguns
- Several AK-47 type 7.62 mm rifles

Each count charged her with either: (1) representing herself as the actual buyer, when in fact she was not; or (2) stating that her address was 221 Houston Street, Columbus, New Mexico, when that was not her current address.

Prior to trial, the government filed a notice of its intent to call ATF Special Agent Jose Ballesteros as an expert witness on straw purchasers, Mexican and American firearms laws, efforts by both governments to stem the flow of firearms into Mexico from the United States, the use of straw buyers by Mexican drug cartels to obtain firearms from the United States, and the types of firearms preferred by the cartels. Garcia moved to exclude this testimony under Fed. R. Evid. 401 and 402, contending that Ballesteros' testimony would be irrelevant, and under Fed. R. Evid. 403, because of the unduly prejudicial effect of testimony about Mexican drug cartels.

The district court permitted Ballesteros to testify, but limited the scope of his testimony. He was permitted to testify generally about straw buyers, why the actual purchaser would use a straw buyer, and that firearms laws in Mexico are more restrictive than those in the United States, including that some types of guns were impossible to purchase legally in Mexico but could be obtained in the United States. However, the court did not permit Ballesteros to testify that, in his opinion, Garcia's purchases and attempted purchases of firearms were consistent with those of a straw purchaser, nor did it permit him to mention or describe Mexican drug cartels.

At trial, Ballesteros testified that a straw purchaser is someone who circumvents firearms laws by falsely representing themselves as the actual buyer of a firearm. He explained that straw buyers generally acquire firearms on behalf of another person who is prohibited from buying guns or who does not wish to be linked to the firearm. He further testified that Mexican gun laws are extremely restrictive, permitting civilians to purchase

only basic firearms, and restricting all other firearms for exclusive use by the military. By contrast, he continued, gun laws in the United States are minimally restrictive, which makes the United States a "source country" for firearms while Mexico is a "demand country."

Garcia was found guilty on eight of ten counts.

## B

During the sentencing hearing, the United States presented additional evidence about Garcia's straw purchases and the recovery of some of the firearms in Mexico.

Albuquerque police officer Luis Hernandez testified about Garcia's attempted purchase of four AK-47 type rifles at an Albuquerque gun show. Hernandez, who was off duty and manning a booth at the show, noticed that two men with Garcia appeared to be furtively whispering to her in Spanish, telling her which guns to purchase. Both men told Hernandez they were from Mexico. When Hernandez asked the men for identification, one of them produced a Mexican driver's license, and the other produced a Mexican identification card.

ATF Agent Karl Jorgensen testified that the Armalite AR-50 rifle Garcia purchased on August 4, 2007, was seized by law enforcement in Durango, Mexico, on September 19, 2008, from members of the Zetas Cartel. Jorgensen testified two of the Glock pistols and two the AK-47 type rifles purchased by Garcia were also recovered in Mexico.

Agent Ballesteros testified again, in more detail, about straw buyers and the

-4-

Mexican demand for firearms from the United States. In addition to repeating much of his trial testimony, he added that the type of firearm a straw purchaser acquires reveals much about the purchaser's state of mind—purchasing a "military grade" firearm suggests a straw purchaser "know[s], or ha[s] reason to know . . . [t]hat the firearm is intended to be used illegally, to either be diverted to the illegal market or to be used [in] some other type of crime." Ballesteros testified that the types of firearms Garcia purchased—high-powered handguns, semi-automatic rifles, and a .50 caliber rifle—are the types of firearms Mexican drug cartels have been acquiring to control their drug routes, wage war against rival drug cartels, and fight the Mexican government.

A four-level sentencing enhancement for arms trafficking was imposed by the court, pursuant to U.S.S.G. § 2K2.1(b)(5). With the resulting offense level of twenty and criminal history category of one, it imposed concurrent terms of imprisonment of forty one months on each count.

## II

### A

We review de novo whether the district court applied the proper standard in deciding to admit or exclude expert testimony. Norris v. Baxter Healthcare Corp., 397 F.3d 878, 883 (10th Cir. 2005). "That is, whether the district court properly performed its role as 'gatekeeper' pursuant to Federal Rule of Evidence 702" and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Norris, 397 F.3d at 883. If the district court applied the correct legal standard, we then review the manner in which the court

performed its gatekeeping role, deciding whether to admit or exclude testimony, for abuse of discretion. Id. A district court abuses its discretion only if its ruling is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. (quotation omitted).

Garcia does not contend that the district court applied the wrong legal standard. We therefore review the district court's evidentiary ruling to determine whether it was arbitrary, capricious, whimsical, or manifestly unreasonable.

**B**

Garcia contends the district court's decision to admit Agent Ballesteros' trial testimony was an abuse of discretion because the testimony "did not assist the jury to understand the evidence or determine a fact in issue," as Fed. R. Evid. 702 requires.[1] Even if the testimony were admissible under Fed. R. Evid. 702, Garcia argues, it should have been excluded under Fed. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice or misleading the jury.

**1**

Relevant expert testimony must "logically advance[] a material aspect of the case," Norris, 397 F.3d at 884 n.2, and be "sufficiently tied to the facts of the case that it

---

[1] District courts must ensure that all expert testimony admitted at trial is both relevant and reliable. Fed. R. Evid. 702; Daubert, 509 U.S. at 589. Garcia does not dispute the reliability of Ballesteros' testimony.

will aid the jury in resolving a factual dispute," Daubert, 509 U.S. at 591 (quotation omitted). In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006) (footnote omitted). Pursuant to Rule 702, courts must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge. United States v. Becker, 230 F.3d 1224, 1231 (10th Cir. 2000).

Because the average juror is often innocent of the ways of the criminal underworld, expert testimony is allowed in order to provide jurors a context for the actions of defendants. For example, pursuant to Fed. R. Evid. 702, we routinely allow law enforcement experts with "other specialized knowledge" to opine as to the means and methods of the narcotics trade. See United States v. Garza, 566 F.3d 1194, 1199 (10th Cir. 2009) (explaining how we have repeatedly permitted police officers to testify as experts on the drug trade).

By analogy, expert testimony that assists jurors in distinguishing the actual purchaser of a firearm from a straw buyer is also relevant. The average juror is as likely to be unaware of the dynamics of the illicit arms trade as of the trade in narcotics. Ballesteros' expert testimony provided a context for the government's evidence which rendered it intelligible to the jury. At trial, the government was required to prove that Garcia knowingly made a false statement to an FLFD. Ballesteros' testimony was

-7-

adduced to show Garcia made the false statements knowingly. He explained the significance of a particular subset of weapons to the jury. Garcia was not buying a random assortment of guns, but instead was selectively acquiring a specialized arsenal of firearms which were in demand in Mexico. The significance of the types of firearms purchased by Garcia is not within the average juror's common knowledge and experience. Ballesteros helped the jury understand the mechanics of the transborder arms trade, by explaining that the guns purchased by Garcia and subsequently recovered in Mexico, were tightly regulated by Mexico, but were readily available in the United States. Comparative gun regulation is not a field within the ken of the average juror.

In short, Ballesteros' expert testimony: (1) placed Garcia's purchases in context by explaining the demand for these guns in Mexico and the value of a straw buyer in the United States; (2) helped explain Garcia's possible profit motive for providing a scarce commodity in Mexico; and (3) helped the jury connect Garcia's modus operandi—purchasing weapons from multiple dispersed gun stores using multiple forms of identification—to her reasons for doing so. Ballesteros' statements provided the jury a critical connection between Garcia's acts and her state of mind. His testimony helped the jury decide whether Garcia "knowingly" made false statements when purchasing firearms, in much the same way that expert testimony enables a jury to distinguish a drug user from a distributer. This evidence was therefore relevant.

**2**

Garcia also contends that the probative value of Ballesteros' testimony was substantially outweighed by the danger of unfair prejudice in violation Fed. R. Evid. 403. Garcia argues Ballesteros implicitly referred to Mexican drug cartels by explaining that the quantity and type of firearms purchased by Garcia were consistent with those of arms recovered from Mexico.

Under Rule 403, "evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Tan, 254 F.3d 1204, 1211-12 (10th Cir. 2001) (alteration and quotation omitted). Even if unfair "prejudice is found, it must substantially outweigh the probative value of the evidence in order to be excluded." Id.

Ballesteros' testimony was carefully proscribed. He was specifically prohibited from mentioning Mexican drug cartels during the trial, and did not mention them during his trial testimony.[2] Insofar as Ballesteros' testimony conjured visions of drug cartels in the minds of the jurors, these images were not unmoored from other evidence presented during the trial. To the contrary, his testimony was firmly anchored in the facts of the

---

[2] Ballesteros testified only that "[t]he type of firearm [Garcia purchased] is what's most being recovered in Mexico at this time. The amount of firearms is consistent with it."

case, specifically Garcia's purchase in cash of thousands of dollars of high-powered weapons and the subsequent recovery of some of these arms in Mexico. Therefore Ballesteros' testimony did not tend to affect the jury's attitude toward Garcia "wholly apart from its judgment as to h[er] guilt or innocence of the crime[s] charged." See Id. There was no abuse of discretion in allowing Ballesteros' testimony.

## III

At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence. United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008). We review the district court's factual findings for clear error. United States v. Orr, 567 F.3d 610, 614 (10th Cir. 2009). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." United States v. McClatchey, 316 F.3d 1122, 1128 (10th Cir. 2003) (quotation omitted).

"If the defendant engaged in the trafficking of firearms," U.S.S.G. § 2K2.1(b)(5) provides for a four-level increase in the offense level. The application note explains that this enhancement applies if the defendant:

> (i) Transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
> (ii) Knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
> > (I) Whose possession or receipt of the firearm would be unlawful;

-10-

or
(II) Who intended to use or dispose of the firearm unlawfully.

§ 2K2.1 cmt. n.13(A). Garcia does not dispute that she transferred two or more firearms to another individual, and the government does not contend that the recipients belonged to the narrow category of prohibited possessors. Therefore the issue is whether Garcia "knew or had reason to believe" that her straw purchases would result in the transfer of firearms to an individual who intended to dispose of them unlawfully.

In assessing a defendant's mental state for the purposes of sentencing, a court may draw "common-sense inferences from the circumstantial evidence." United States v. Juarez, 626 F.3d 246, 256 (5th Cir. 2010) (quotation omitted). Our Circuit has not previously addressed the type of circumstantial evidence necessary to support the firearms trafficking enhancement of § 2K2.1(b)(5). However, the facts of this case are analogous to those of Juarez, and we find that decision's reasoning compelling.

In Juarez, the government presented evidence that the defendant purchased twenty-five firearms, the majority of them military-style arms. 626 F.3d at 249. The evidence also indicated that some of these arms were subsequently recovered from gang members in Mexico. Id. In addition, the defendant had an ongoing relationship with an arms buyer who specified which weapons to purchase, provided her with the cash for the weapons, and then paid the defendant $200 for each firearm. Id. In light of these facts, the Fifth Circuit concluded that the district court did not clearly err by applying the enhancement, given "[t]he number of weapons, their type, and the circumstances

-11-

surrounding Juarez's relationship" with the arms buyer—specifically the "clandestine nature" of this relationship. Id. at 252.

In this case, the government presented evidence at sentencing that Garcia had purchased or attempted to purchase nineteen firearms, all of which are types of weapons Mexican drug cartels actively seek in the United States. The government presented testimony that five of these weapons were in fact recovered in Mexico. In particular, the district court heard that the AR-50 rifle was seized from three members of the Zetas Cartel.

Agent Ballesteros testified at sentencing that, in his experience, straw purchasers were generally aware the firearms they purchased were intended to be used illegally. He testified that the role of firearms in the Mexican drug war was common knowledge along the border, the area where Garcia lived when she made her purchases. The district court also heard evidence of the "significant drug war" taking place "across the border from New Mexico into Mexico."

The government presented evidence of the clandestine relationships involved in Garcia's firearms purchases. When attempting to make one purchase, she was dropped off some distance from the gun store by two men who sped away. She was furtively directed to buy four AK-47 type weapons by the two men whispering in Spanish at the Albuquerque gun show. Evidence at trial also indicated that someone else was funding Garcia's gun shopping spree. Despite being unable to pay her rent and reporting an income of only $4171 in 2008, Garcia paid thousands of dollars for firearms, in cash,

including over $3000 for a single sniper rifle, in less than a year.

Garcia seeks to distinguish this case from <u>Juarez</u>, arguing the government failed to present evidence of: (1) the identity or number of persons for whom she obtained firearms; (2) the source of her funds for the purchases; (3) how she transferred the weapons to their actual buyers; and (4) whether she was compensated for acting as a straw buyer.

We do not consider these distinctions to be dispositive. The district court had ample circumstantial evidence from which to infer Garcia knew or had reason to believe the arms she purchased were destined for individuals who would dispose of them unlawfully. As in <u>Juarez</u>, there was evidence that Garcia bought the type of weapons preferred by Mexican cartels, and that she bought them in significant quantities. As in <u>Juarez</u>, there was evidence that weapons purchased by Garcia were recovered in Mexico, including from the Zetas Cartel. On the basis of this evidence, and the rest of the government's circumstantial evidence, we cannot conclude that the district court clearly erred when it inferred that Garcia knew or had reason to believe she was transferring firearms to individuals who intended to dispose of them in an unlawful manner.

**IV**

For the foregoing reasons we **AFFIRM** Garcia's conviction and sentence.