**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

DARREN GLEN HOWARD,

 Defendant - Appellant.

No. 13-7014

(E.D. Oklahoma)

(D.C. No. 6:12-CR-00064-RAW-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

 Defendant and appellant, Darren Glen Howard, appeals the forty-one month sentence imposed on him following his plea of guilty to one count of conspiracy

---

 [*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

to knowing possession of a stolen firearm, in violation of 18 U.S.C. § 371. Finding that the district court did not err in imposing Mr. Howard's sentence, we affirm.

## BACKGROUND

Mr. Howard had been committing burglaries and concealing stolen property in the Tahlequah, Oklahoma, area since at least 2006. When a local storage unit was burglarized, local law enforcement questioned Mr. Howard on December 9, 2011, about the crime. He admitted that he had broken into the storage unit, where he had found a large gun safe. Mr. Howard persuaded his brother to help him load the safe into a vehicle. Mr. Howard later broke into the safe and retrieved six firearms: a Remington Sendero 7mm, a Cooper Firearms 17 Mach 4, a BAT Machine Company 6 mm Dascher caliber rifle, a Walther .22 caliber bolt action rifle, a Colt 45, and a Russian Vostok .22 caliber pistol.

Agents from the Alcohol, Tobacco, Firearms and Explosives Department ("ATF") learned on December 15, 2011, that Timothy Hess, Mr. Howard's father-in-law, was selling stolen firearms. Mr. Hess sold three of the firearms stolen by Mr. Howard from the local storage unit to a confidential informant ("CI") in an ATF-controlled buy. On December 19, 2011, the CI bought three more firearms and a computer from Mr. Hess in another ATF-controlled buy. Mr. Hess told the CI that one of the firearms was stolen by Mr. Howard from a lake house and that

four additional firearms were lying on the bed when Mr. Howard broke into the lake home.  Mr. Hess further told the CI that the firearms would not be reported as stolen and that more were available for purchase.  Mr. Hess also told the CI that, although Mr. Howard had been arrested for burglarizing the storage unit, the police had only located about half of Mr. Howard's stash of stolen firearms.

Mr. Hess was arrested in August 2012.  He told law enforcement authorities that Mr. Howard had brought stolen weapons to Mr. Hess's house for storage and sale since Mr. Howard could not have firearms because of his criminal record.  Mr. Howard specifically informed Mr. Hess that the firearms had been stolen.

Mr. Hess also told a CI that Mr. Howard gave some of the stolen firearms to Tony Dickson, a convicted felon.  Mr. Howard admitted, in a post-arrest and post-Miranda interview with Tahlequah Police Officer Dale Glory that he had traded some of the stolen firearms for drugs from a narcotics dealer in Stilwell, Oklahoma.

Mr. Howard pled guilty, on September 19, 2012, to one count of conspiracy to knowingly possess a stolen firearm, in violation of 18 U.S.C. § 371.  Mr. Howard provided the following factual basis for his guilty plea:  "I committed a crime of conspiracy against the United States.  I agreed to provide stolen guns – oh, I did provide stolen guns to Tim Hess, my co-conspirator.  I did this in Cherokee County in the Court's jurisdiction.  This happened around October to December of 2011."  Tr. of Change of Plea Hr'g at 14, R. Vol. 2 at 20.

Following Mr. Howard's guilty plea, and in preparation for sentencing under the United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office prepared a presentence report ("PSR"). The PSR included a four-level increase in Mr. Howard's offense level pursuant to USSG §2K2.1(b)(5), because Mr. Howard had "trafficked" in firearms.

Mr. Howard objected to the four-point increase, arguing that there was insufficient evidence that he knew the firearms were transferred to a person for whom it was illegal to possess such firearms, or who was going to use them unlawfully.

The government responded with specific facts demonstrating that Mr. Howard had stolen numerous firearms which he had disposed of in multiple locations; that Mr. Howard traded some stolen guns to a drug dealer; that Mr. Howard had told a CI that he gave some stolen firearms to a convicted felon; and that he had sold stolen firearms to Mr. Hess, acting as a fence, when Mr. Hess, as a co-conspirator in possessing the stolen firearms, knew the weapons were stolen.

At Mr. Howard's sentencing hearing, the district court overruled Mr. Howard's objections and imposed the firearms trafficking enhancement provided by USSG §2K2.1(b)(5). He was accordingly sentenced to forty-one months' imprisonment. This appeal followed, in which Mr. Howard challenges his sentence on the sole ground that the district court erred in assessing a four-level

increase in his base offense level under the advisory Guidelines on the ground

that he had "engaged in the trafficking of firearms."  Id.

## DISCUSSION

As indicated, USSG §2K2.1(b)(5) provides for a four-level increase in a

defendant's base offense level "[i]f the defendant engaged in the trafficking of

firearms. . . ."  Application Note 13(A) of § 2K2.1 states:

> Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant–
>
> (i)   Transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
> (ii)  Knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual–
> (I) Whose possession or receipt of the firearm would be unlawful; or
> (II) Who intended to use or dispose of the firearm unlawfully.

USSG §2K2.1, comment. (n.13(A)).  Application Note 13(B) further states:

> "Individual whose possession or receipt of the firearm would be unlawful" means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Id., comment. (n.13(B)).  The district court here found that Mr. Howard disposed

of the firearms to "an individual whose possession and receipt were unlawful."

Tr. of Sentencing Hr'g at 11, R. Vol. 2 at 34. As the court stated more fully, "The defendant . . . transferred six of the firearms to the co-defendant, Timothy Hess. Therefore, the defendant possessed more than two firearms with the intent to transfer or dispose of the firearms to another individual. Furthermore, since the firearms were known to be stolen by the defendant and he chose to transfer the firearms to the co-defendant, this resulted in the defendant disposing of the firearms to an individual whose possession and receipt were unlawful." Id.

At a defendant's sentencing, "the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence." United States v. Garcia, 635 F.3d 472, 478 (10th Cir. 2011); United States v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008). "We review the district court's factual finding for clear error." Garcia, 635 F.3d at 478. "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." Id. (quoting United States v. McClatchey, 316 F.3d 1122, 1128 (10th Cir. 2003) (further quotation omitted)).

As in our Garcia case, Mr. Howard does not dispute that he transferred two or more firearms to another individual. Thus, the issue is whether Mr. Howard "knew or had reason to believe" that the firearms he had stolen and transferred to

Mr. Hess and others constituted the transfer of firearms to an individual whose possession or receipt of such firearms was (or would be) unlawful.

"In assessing a defendant's mental state for the purposes of sentencing, a court may draw 'common-sense inferences from the circumstantial evidence." Garcia, 635 F.3d at 478 (quoting United States v. Juarez, 626 F.3d 246, 256 (5th Cir. 2010)). Mr. Howard's primary argument is that the district court seemed to rely upon the provision of the Application Note referring to the transfer of firearms to an individual whose *possession* or receipt of the firearms would be unlawful, as opposed to the provision referring to transfer to an individual whose intended *use* of the firearm is unlawful. He argues that the Application Note states that an "individual whose possession . . . of the firearm would be unlawful" means only individuals with prior convictions or those contemporaneously under a criminal justice sentence, and there is no evidence that Mr. Hess specifically meets those criteria: "there was no evidence in this case that Timothy Hess was a prohibited person based on any prior conviction or that he was under a criminal justice sentence of any kind at the time of the transfer." Appellant's Br. at 8. Thus, the argument goes, the district court erred in finding the trafficking enhancement satisfied on the ground that Mr. Hess's possession of the stolen firearms would be unlawful.

We do not read either the district court's analysis, the evidence before the court, or the Application Note that narrowly. We noted in our decision in Garcia

that our circuit had "not previously addressed the type of circumstantial evidence necessary to support the firearms trafficking enhancement of §2K2.1(b)(5)." Id. at 479. Garcia and the case upon which it relied, United States v. Juarez, 626 F.3d 246 (5th Cir. 2010), both involved application of the trafficking enhancement when the government proved by a preponderance of the evidence that the transferee of the firearms in question "intended to use or dispose of the firearm unlawfully." USSG §2K2.1(b)(5), comment. (n.13(A)(ii)(II)). But, the analysis employed in each decision did not so narrowly focus solely on the status of the firearm transferee, as Mr. Howard asks us to do.

The defendant in Juarez had purchased twenty-five firearms, the majority of which were military-style arms. Some of these firearms were ultimately recovered from gang members in Mexico. Additionally, the government presented evidence that the defendant had an ongoing relationship with an arms buyer, who directed the weapons purchases, telling the defendant which weapons to purchase, providing cash for those purchases, and then paying the defendant $200 for each firearm. Given those facts ("[t]he number of weapons, their type, and the circumstances surrounding [the defendant's] relationship [with the arms buyer, including its] clandestine nature"), the Fifth Circuit concluded that the "trafficking" enhancement applied. Juarez, 626 F.3d at 249-52.

Similarly, in Garcia, we noted that "the government presented evidence at sentencing that Garcia had purchased or attempted to purchase nineteen firearms,

all of which are types of weapons Mexican drug cartels actively seek in the United States." Garcia, 635 F.3d at 479. Some of the weapons were, in fact, recovered in Mexico, including some seized from Mexican cartel members. Furthermore, a government agent testified that, "in his experience, straw purchasers [like Garcia] were generally aware that firearms they purchased were intended to be used illegally." Id. All that evidence supported our conclusion that the defendant in Garcia knew or had reason to believe that the firearms she purchased and passed on were intended to be used illegally.

In this case, there was no doubt that the firearms were stolen, and that Mr. Hess was aware of their status as stolen firearms. Thus, as in Garcia and Juarez, we, and the district court, may heed the status of the weapons themselves, and the parties' awareness of that status. We agree with the government that "anyone receiving such firearms with any reasonable cause to believe the guns were stolen would be possessing the weapons illegally." Appellee's Br. at 11. We do not ask the district court "to divorce [itself] from common sense or to ignore what is perfectly obvious" in determining whether Mr. Howard had transferred stolen firearms to an individual whose possession of those weapons would be unlawful. United States v. Molloy, 324 F.3d 35, 40 (1st Cir. 2003). Furthermore, Mr. Howard had transferred at least one of the stolen firearms to a drug dealer and to a known felon. Tr. of Sentencing Hr'g at 6-7, R. Vol. 2 at 29-30. We perceive no clear error in the district court's determination that the government had

established by a preponderance of the evidence the applicability of the trafficking enhancement.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge