**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ATANASIO ARECHIGA-MENDOZA,
a/k/a Manuel Sarate, a/k/a Aden Aregin
Magana, a/k/a/ Ignacio Mendoza
Arrechiga, a/k/a/ Uriel Arechiga,

      Defendant-Appellant.

No. 13-1082
(D.C. No. 1:12-CR-00099-CMA-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **HOLLOWAY**[**] and **PHILLIPS**, Circuit Judges.

Atanasio Arechiga-Mendoza (Arechiga) was convicted of being an alien in

possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), of

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge,
was assigned to this matter originally but passed away before final disposition. "The
practice of this court permits the remaining two panel judges, if in agreement, to act as a
quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th
Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedures
permitting disposition of an appeal where remaining quorum of panel agrees on the
disposition). The remaining panel members have acted as a quorum with respect to this
Order and Judgment.

possessing an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871, and of possessing with intent to distribute methamphetamine in excess of five grams, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 851. On appeal, Arechiga contends that the district court should have compelled disclosure of information concerning a confidential informant, and that two sentencing enhancements were unwarranted. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we vacate in part, and remand.

## I

Atanasio Arechiga-Mendoza (Arechiga) was an illegal alien living in Colorado Springs, Colorado. Unbeknownst to Arechiga, his next-door neighbor, Veronica Munoz-Villa (Munoz), was a confidential informant (CI) for the police.

On January 4, 2012, Detective Rhonda Yohn received a phone call from Munoz. Munoz informed Detective Yohn that Arechiga was selling methamphetamine. Detective Yohn instructed Munoz to tell Arechiga that Detective Yohn, as her undercover alias, was interested in buying methamphetamine. Munoz complied and arranged a phone conversation between Detective Yohn and Arechiga.

The next day, on January 5, Detective Yohn met with Arechiga, purchasing in excess of five grams of methamphetamine from him. That evening, Detective Yohn procured a search warrant for Arechiga's home. And on January 6, the police executed the warrant and recovered four firearms, including two short-barreled ("sawed off") shotguns, from Arechiga's home. For all of this, Arechiga was arrested. Arechiga would

2

later testify that he was only storing the shotguns for their owner, Richard, and that Arechiga expected some men to pick up the shotguns and take them to Mexico.

A grand jury returned a three-count indictment charging Arechiga with being an alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2) (Count 1), possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count 2), and possession with intent to distribute methamphetamine in excess of five grams, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 851 (Count 3).

Before trial, Arechiga sought disclosure of information about Munoz. Arechiga explained that he knew that Munoz was the CI who had worked with Detective Yohn, and that he intended to call Munoz as a witness. Specifically, Arechiga would argue that Munoz, acting as an agent of the government, entrapped him. Arechiga requested, therefore, that the government disclose information concerning, among other things, Munoz's criminal record and "[a]ll information concerning promises of leniency, consideration or compensation given to the witness or which may be used to impeach the credibility of the witness." R. Vol. I at 54-55. According to Arechiga, any incentives Munoz had to produce results as a CI would be relevant to his entrapment defense.

Notably, Arechiga and Munoz told very different stories about the events leading up to Arechiga's meeting with Detective Yohn. As Arechiga told it, Munoz hounded him to make the sale to Detective Yohn. He said that Munoz accosted him on no fewer than ten occasions to make the sale, even going so far as to threaten to report Arechiga and his

3

family to the immigration authorities if he refused. Munoz, by contrast, stated that she asked Arechiga only once to make the sale, and that she made no threats. It was Arechiga's hope that information concerning Munoz's compensation for her work as a CI would make his version of the events more persuasive at trial, thereby bolstering his entrapment defense.

The government opposed Arechiga's request for disclosure on the grounds that the government did not intend to call Munoz as a witness, and that, notwithstanding Arechiga's knowledge of Munoz's identity, the government retained an interest in keeping the information confidential.

The district court refused to compel disclosure. The court reasoned that the discovery was irrelevant to the case because the government did not intend to call Munoz.

At trial, Detective Yohn testified that Munoz was compensated for work as a CI, but Detective Yohn did not know what form the compensation took. When defense counsel called Munoz to testify, she admitted that her son-in-law, Julio, had been arrested for selling drugs, and that she became a CI only after Julio's arrest. Nevertheless, Munoz denied being compensated for her work as a CI with either money or leniency for Julio. According to Munoz, she informed the police of her neighbor Arechiga's activities only out of concern for the safety of her family.

The jury convicted Arechiga on all three counts. At sentencing, over Arechiga's objection, the district court applied an "ice" enhancement to Arechiga's sentence for the drug conviction. Under U.S.S.G. § 2D1.1, methamphetamine qualifies as "ice" when it is

4

at least 80% pure. The court based the enhancement on an expert's unchallenged testimony that the methamphetamine Arechiga sold to Detective Yohn was over 93% pure.

The district court also applied, over Arechiga's objection, a "trafficking" enhancement to Arechiga's sentences for both firearm convictions. Under U.S.S.G. § 2K2.1(b)(5) and Application Notes 13(A) and (B) to U.S.S.G. § 2K2.1, such an enhancement is permitted where defendant "engaged in the trafficking of firearms," which is to say that he "[k]new or had reason to believe that" the men who would take the shotguns to Mexico were men (1) "[w]hose possession or receipt of the firearm would be unlawful; or" (2) "[w]ho intended to use or dispose of the firearm unlawfully." Rather than basing the enhancement on a factual finding, the court justified the enhancement on the ground that the transfer of firearms into Mexico is *per se* illegal, thereby satisfying the unlawful "use or dispos[al]" requirement.

## II

On appeal, Arechiga raises three arguments. First, he contends that his drug conviction should be vacated because the district court should have compelled disclosure of information concerning Munoz. Second, he contends that the "ice" enhancement violated his Sixth Amendment rights because the district court, not the jury, determined that the methamphetamine he sold exceeded 80% in purity, thereby qualifying as "ice" under U.S.S.G. § 2D1.1. Third, he contends that the "trafficking" enhancement was imposed by the district court in the absence of a finding that he knew or had reason to

5

believe that the men to whom he intended to transfer the firearms would use or dispose of the firearms unlawfully.

**A**

Arechiga's argument for disclosure of information about Munoz is properly understood as coming within the Supreme Court's ruling in Roviaro v. United States, 353 U.S. 53 (1957). In Roviaro, the Supreme Court explained that

> [w]hat is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
>
> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

353 U.S. at 59-60 (citations omitted) (footnotes omitted). "The court must 'balance' the public interest in protecting informants and the defendant's right to mount a defense." United States v. Cruz, 680 F.3d 1261, 1262 (10th Cir. 2012). "Resolving these interests turns on the particular circumstances of each case, like the crime charged, the possible defenses, and the possible significance of the informer's testimony." Id. (alteration omitted) (quoting Roviaro, 353 U.S. at 62, 77) (internal quotation marks omitted). We review the district court's denial of Arechiga's motion to compel disclosure for abuse of

6

discretion.  See id. at 1262.

Here, Arechiga clearly knew Munoz's identity.  By the time trial commenced, he knew she was a CI, and he knew where she lived.  This distinction renders inapposite the cases on which the government relies.  See United States v. Mendoza-Salgado, 964 F.2d 993, 1000-01 (10th Cir. 1992) (declining to compel disclosure of informer's identity where defendant could do no more than speculate as to the possible relevance of the informer's testimony); United States v. Ortiz, 804 F.2d 1161, 1166-67 (10th Cir. 1986) (declining to compel disclosure of informer's identity where defendant was incapable of articulating a relevant use for the information).  Further, because Arechiga knew Munoz's identity, that she was a CI, and where she lived, the government could not base its assertion of privilege under Roviaro on a need to keep this information confidential.

Importantly, we disagree with the district court that the government's disinterest in calling Munoz as a witness renders Arechiga's requested discovery irrelevant. Arechiga's defense was entrapment, and Arechiga's testimony conflicted directly with Munoz's testimony as regards the role she played, or did not play, in Arechiga's alleged entrapment.  That factual dispute is a material one, and evidence of Munoz's compensation or lack thereof is relevant to resolving that dispute.  What is more, Jury Instruction No. 21 explained to the jury that they "must determine whether the informant's testimony has been affected by self-interest, by an agreement she has with the Government, by her own interest in the outcome of the case, or by prejudice against the Defendant."  Supp. R. Vol. I at 29; see also id. (instructing the jury to analyze Munoz's

7

testimony "with greater care than the testimony of an ordinary witness"). The requested discovery could be relevant to that determination.

As we do not know the content of the requested information and whether based upon that content the government has an interest in keeping the requested discovery confidential, we remand for the district court to review *in camera* the requested discovery. Rather than "speculate about the interests," United States v. Moralez, 908 F.2d 565, 568 (10th Cir. 1990), the district court should review the information and conduct the Roviaro balancing test to determine whether disclosure was required. If, after that review, the district court determines that disclosure was required, then the conviction on the drug charge should be vacated and a new trial held.

**B**

Arechiga argues that because the jury made a finding only as to the quantity of the methamphetamine, not the purity, the "ice" enhancement was unwarranted. "When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions *de novo* and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Munoz-Tello, 531 F.3d 1174, 1181 (10th Cir. 2008) (internal quotation marks omitted). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." United States v. Garcia, 635 F.3d 472, 478 (10th Cir. 2011).

Although "[e]lements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt," "[s]entencing factors . . . can be proved to a judge at sentencing by a preponderance of the evidence." United States v. O'Brien, 560 U.S. 218, 224 (2010). The rule comes with one exception: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (alteration in original) (internal quotation marks omitted). That is, "judge-found sentencing factors cannot increase the maximum sentence a defendant might otherwise receive." O'Brien, 560 U.S. at 224.

Title 21 U.S.C. § 841(b)(1)(B)(viii) states that a conviction for possession with intent to distribute "5 grams or more of methamphetamine" carries a "term of imprisonment which may not be less than 5 years and not more than 40 years." Here, Arechiga was sentenced to 12 years and 7 months (151 months) for the drug offense. Therefore, Arechiga's sentence did not exceed the statutory maximum range, and we review only for clear error the district court's finding that the methamphetamine qualified as "ice."

Under U.S.S.G. § 2D1.1, methamphetamine qualifies as "ice" when at least 80% pure. Timothy McKibben, a forensic chemist, testified that the methamphetamine in the two bags Detective Yohn purchased from Arechiga exceeded 93% in purity. His testimony was unchallenged. Given McKibben's testimony, it cannot be said that the court clearly erred in concluding that the purity of the methamphetamine at issue met the

9

definition of "ice" under the Guidelines.

## C

Arechiga also argues that the district court erred in applying the "trafficking" enhancement. U.S.S.G. § 2K2.1(b)(5) permits an enhancement where the defendant "engaged in the trafficking of firearms." Application Notes 13(A) and (B) to U.S.S.G. § 2K2.1 explain that § 2K2.1(b)(5) requires that Arechiga "[k]new or had reason to believe that" the men who would take the shotguns to Mexico were men (1) "[w]hose possession or receipt of the firearm would be unlawful; or" (2) "[w]ho intended to use or dispose of the firearm unlawfully."

Rather than make a factual finding as to Arechiga's knowledge of the men's intentions, the district court applied the enhancement on the ground that the transfer of firearms into Mexico is *per se* illegal. We review this legal conclusion *de novo*, see Munoz-Tello, 531 F.3d at 1181, and conclude that exporting firearms into Mexico is not *per se* illegal. See, e.g., 22 U.S.C. § 2778 (describing requirements for exporting defense articles); Garcia, 635 F.3d at 478-80 (analyzing the circumstantial evidence to support a conclusion of unlawful "use or dispos[al]," rather than assuming that transfer to Mexico is *per se* illegal).

To be clear, we do not hold that the "trafficking" enhancement cannot be supported. Rather, we hold simply that the legal basis on which the district court made its determination was in error. Therefore, we vacate Arechiga's sentences for the firearm counts and remand for resentencing. On remand, the district court will have the

10

opportunity to determine in the first instance whether there is support for the application of U.S.S.G. § 2K2.1(b)(5).

### III

We REMAND the drug conviction (Count Three) to the district court for review *in camera* of the information sought by Arechiga concerning the confidential informant. If, after that review, the district court determines that disclosure was required, then a new trial on the drug charge must be held. We also, because of the district court's erroneous application of the "trafficking" enhancement under U.S.S.G. § 2K2.1(b)(5), VACATE Arechiga's sentence and REMAND for resentencing.[1]

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[1] On remand, the district court shall have the authority to reconsider *de novo* the entire "sentencing package," including, if applicable, the sentence for Count Three. See United States v. Hicks, 146 F.3d 1198, 1200-03 (10th Cir. 1998).

11