**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DONTAE DANIEL HINES,

    Defendant - Appellant.

No. 14-1451
(D.C. No. 1:13-CR-00194-WJM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

Dontae Hines appeals following his convictions for being a felon in possession of a firearm, possessing a firearm in furtherance of a drug trafficking offense, and possessing cocaine base with intent to distribute. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On April 18, 2013, the Denver Police Department's Vice and Narcotics Bureau executed a "buy-bust" operation near East Colfax Avenue. An undercover detective, Joseph Portillo, purchased crack cocaine from Hines in an apartment building entryway. Portillo signaled to other officers that the transaction was complete at

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

approximately 9:00 p.m. As uniformed officers entered the building, Hines fled upstairs. Officer Richard Shurley pursued.

Shurley testified that as he reached the top of the stairs, he had a clear view down a fifty-foot, well-illuminated hallway. He observed Hines stop near the far end of the hallway, remove a handgun from his waistband, and place it on a blue container in front of apartment 202. Shurley continued to pursue Hines, who exited the hallway through a door at the far end.

Hines was apprehended by a group of officers, including Shurley and Portillo. After Hines was taken into custody, Shurley stated that he needed to go back and retrieve a gun. He found a Glock 30 .45 caliber handgun under a trash bag in the blue container near apartment 202. The resident of apartment 202, Briana Overy, told officers that the blue container and trash bag belonged to her, but the handgun did not.

At trial, the prosecution conducted a courtroom demonstration during the testimony of Detective James Anderson, who was the case agent for Hines' trial. Anderson testified that the hallway where Shurley recovered the handgun was approximately 52 feet long and measured the same distance in the courtroom. The prosecutor then asked Anderson to step off the stand and testify from the measured distance. Defense counsel objected that Anderson should testify from the stand, but was overruled. Anderson identified a handgun held in the prosecutor's right hand from 52 feet away. Defense counsel immediately objected that the demonstration had "no relevance" because Anderson was not the officer who claimed to have seen

-- 2

the gun, and the lighting in the courtroom was not the same as the lighting in the

hallway. The court overruled the objection, stating that the points raised "go to the

weight of the evidence."

The jury convicted Hines on all three charges: possession of cocaine base with

intent to distribute, possession of a firearm by a felon, and possession of a firearm in

furtherance of a drug trafficking offense. He was sentenced to 72 months'

imprisonment. Hines timely appealed.

## II

Hines contends the district court erred in permitting a courtroom

demonstration without a showing that conditions in the courtroom were substantially

similar to those in the hallway. We ordinarily review a district court decision to

permit an in-court demonstration for abuse of discretion. United States v. Wanoskia,

800 F.2d 235, 238 (10th Cir. 1986). The government argues that we should review

only for plain error because Hines did not object to the demonstration before it

occurred.[1] "A timely objection, accompanied by a statement of the specific ground

of the objection, must be made when evidence is offered at trial to preserve the

question for appeal . . . ." United States v. Norman T., 129 F.3d 1099, 1106 (10th

Cir. 1997). Hines counters that defense counsel objected immediately after the

demonstration—which occurred without warning—when the district court could have

instructed the jury to disregard the display. See United States v. Banks, 761 F.3d

---

[1] At oral argument, the government clarified that it seeks plain error review with respect to only part of Hines' argument. We consider preservation of Hines' two sub-arguments below.

-- 3

1163, 1186 (10th Cir. 2014) ("[A] litigant must lodge an objection to a purported error while the district court still has an opportunity to fix it.").

In assessing the proper standard of review, we think it helpful to consider Hines' two sub-arguments separately. Hines argues that the district court abused its discretion by failing to make a substantial similarity finding, and by permitting the demonstration when conditions were not in fact substantially similar. With respect to the latter argument, we assume that Hines' objection was sufficient because we conclude his claim fails under either potential standard of review. With respect to the former sub-argument, however, we conclude that plain error review is appropriate because Hines never objected to a lack of findings before the district court.

## A

To prevail on plain error review, Hines must show: (1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). We question whether the district court's explanation was insufficient, much less plainly so. In response to Hines' objection, the court stated that any difference in conditions "go[es] to the weight of the evidence." "If there is substantial similarity, the differences between the test and the actual occurrence ordinarily are regarded as affecting the weight of the evidence rather than its admissibility." Wanoskia, 800 F.2d at 238 (quotation omitted). Accordingly, the court's ruling could be read as an implicit finding that conditions were substantially similar.

-- 4

In any event, Hines' contention that the district court did not make the proper findings fails the third step of the plain error analysis. To demonstrate that an error affected his substantial rights, "the appellant must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Gonzalez-Huerta, 403 F.3d at 733 (quotation omitted). As described infra, we conclude that the conditions in the courtroom were sufficiently similar to the conditions in the hallway such that the district court possessed discretion to permit the demonstration. Accordingly, we hold there is not a reasonable probability that further explanation would have affected the outcome of Hines' trial.

**B**

Our court has recognized that in-court demonstrations "can be highly persuasive" and thus "the court must take special care to ensure that the demonstration fairly depicts the events at issue." Wanoskia, 800 F.2d at 237-38. If an in-court demonstration "purports to simulate actual events and to show the jury what presumably occurred at the scene . . . , the party introducing the evidence has a burden of demonstrating substantial similarity of conditions." Jackson v. Fletcher, 647 F.2d 1020, 1027 (10th Cir. 1981). Conditions need "not be identical but they ought to be sufficiently similar so as to provide a fair comparison." Id.

The courtroom conditions were undisputedly the same as those in the hallway in two respects: the distance and the item being identified. And the conditions obviously differed in one respect: the officer who participated in the demonstration was not the officer who saw Hines drop the gun in the hallway. The parties thus

-- 5

spend a great deal of their briefing disputing whether the lighting conditions were similar. We think the government has the better argument on that issue.

Shurley testified that the hallway was "well illuminated," that the "lighting [wa]s great" in front of apartment 202, and that he had a "perfect view" of Hines dropping the handgun. Overy stated that the hallway was "pretty lit up" and that she would have no trouble seeing a medium sized teddy bear from the far end of the hall. The testimony was in conflict as to whether Exhibit O, a somewhat dark photograph of the hallway included in the record on appeal, accurately depicted the lighting conditions on the night of Hines' arrest. Shurley testified that the hallway "was more well lit than it is in th[e] photo." Overy testified that Exhibit O was darker than the actual hallway when the exhibit was displayed on a computer monitor at trial, but stated that the actual photo accurately showed the lighting conditions. Anderson (who was not present on the night of the arrest but viewed the hallway at a later date) testified that Exhibit O appeared darker than the actual conditions "because, as you can see in the picture, it's very, very bright where the photo is actually being taken." However, Officer Ronald Helm testified that the lighting in Exhibit O is "probably a little better" than when Hines was arrested.

None of the witnesses directly compared the lighting in the courtroom to the lighting in the hallway before the demonstration occurred.[2] Nevertheless, viewing

---

[2] Hines claims that Helm testified the courtroom was "better well lit" than the hallway. But this claim is incorrect. Helm actually agreed with counsel that the courtroom had better lighting than the "entryway." This testimony concerned Helm's

the record as a whole, we conclude that the district court did not abuse its discretion in permitting the demonstration. As the foregoing paragraph indicates, the bulk of the trial testimony indicated that the hallway in front of apartment 202 was well lit notwithstanding some disagreement regarding Exhibit O. And although the witness making the identification was not the witness who observed Hines, both the distance and the item identified were the same in the demonstration and the actual occurrence. "A district court abuses its discretion only if its ruling is arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Garcia, 635 F.3d 472, 476 (10th Cir. 2011) (quotation omitted). We conclude that permitting the demonstration was within the district court's discretion.

## III

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge

---

ability to see from a distance what was happening when uniformed officers entered the entryway where the crack cocaine transaction occurred prior to Hines fleeing.

After the demonstration, Anderson testified that the area of the courtroom in which the prosecutor was standing "is actually darker than in front of apartment No. 202 where Officer Shurley observed Mr. Hines." Because this testimony occurred after the demonstration, however, it could not have formed a basis for the district court's ruling.

-- 7